FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

JAN 1 1 2019

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____KMT_____,DEPUTY

Ab'dullah Lamar Rashid Muhammad,
**Plaintiff,**

**Vs.**                                     Case No. **CIV-18-911-G**

Latoya Dawson, Captain – Lawton Correctional Facility;
R. Parnell, Correctional Officer – Lawton Correctional Facility;
Bonnie Green, Case Manager – Lawton Correctional Facility;
R. Harding, Major - Lawton Correctional Facility;
F. Williams, Physician Assistant - Lawton Correctional Facility;
A. Wolf, Lieutenant - Lawton Correctional Facility;
"Jane Doe" Mudd, Correctional Officer - Lawton Correctional Facility;
D. McClung, Correctional Officer - Lawton Correctional Facility;
B. Collins, Assistant Warden - Lawton Correctional Facility;
J. Carlisle, Chaplain - Lawton Correctional Facility;
A. Craig, Case Manager - Lawton Correctional Facility;
c/o Dorsey, Disciplinary Hearing Coordinator - Lawton Correctional Facility; and
Sgt. Clark, Disciplinary Hearing Officer - Lawton Correctional Facility,
**each named in their Individual / Official Capacity,**
**Defendants.**

# "AMENDED
## CIVIL RIGHTS COMPLIANT
### PURSUANT TO 42 U.S.C. §/§ 1983

## A. PARTIES

Comes Now the Plaintiff, Ab'dullah Lamar Rashid Muhammad, acting pro-se, to allege among other things, that on April 13th, 2018; the Defendant Latoya Dawson, "THREATENED" the Plaintiffs life, and that Defendants two (2) through thirteen (13), each acting individually and in concert with the other, conspired with and attempted to conceal the wrongful actions of their fellow employee, Defendant Dawson[1], by repeatedly filing false/bogus misconduct reports against the Plaintiff, and out right denying the Plaintiff a fair and impartial disciplinary hearing on said false/bogus misconduct charges.

Further facts are:

---

1   This Facility has a history of staff assaults on and abuse of inmates, which is often overlooked and/ or ignored by the D.O.C. contract monitors and L.C.F. Administrative staff who themselves have been involved in the assaults on the inmates/ offenders. In one such case, Defendant Dawson was previously sued by another inmate (Butler v. Rios, CIV-17-364-7) for conspiring with other inmates / gangs and allowing him to be assaulted / stabbed by two (2) other inmates.

1.      The Plaintiff, **Ab'dullah Lamar Rashid Muhammad**, is an insulin dependent handicap inmate who's currently confined at the Lawton Correctional Facility(hereinafter L.C.F.), a private prison located at 8607 South East Flower Mound Road, in Lawton, Oklahoma.

2.   (a)   The **First** Defendant, **Latoya Dawson**, who is being **named in her Individual and Official capacity**, is employed as a Captain at the Lawton Correctional Facility, located at 8607 S. E. Flower Mound Road in Lawton, Oklahoma.

At the time the claims alleged in this complaint arose, was this Defendant acting under Color of state law? _X_Yes. If your answer is 'yes', briefly explain:

Defendant Dawson, who's often referred to as the "LCF Hood Rat", is employed by the Lawton Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates. A position that she was **promoted** to after being **sued** for allegedly **allowing several inmates to assault/stab another inmate.**

   (b)   The **Second** Defendant, **R. Parnell**, who is being **named in her Individual and Official capacity** is employed as a Correctional Officer at the Lawton Correctional Facility, located at 8607 S. E. Flower Mound Road in Lawton, Oklahoma.

At the time the claims alleged in this complaint arose, was this Defendant acting under Color of state law? Yes. If your answer is 'yes', briefly explain:

Defendant Parnell is employed by the Lawton Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates.

   (c)   The **Third** Defendant, **Bonnie Green**, who is being **named in her Individual and Official capacity**, is employed as a Correctional Case Manager at the Lawton Correctional Facility, located at 8607 S. E. Flower Mound Road in Lawton Oklahoma.

At the time the claims alleged in this complaint arose, was this Defendant acting under Color of state law? Yes. If your answer is 'yes', briefly explain:

Defendant Green is employed by the Lawton Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates.

   (d)   The **Fourth** Defendant, **R. Harding**, who is being **named in his Individual and Official capacity** is employed as the Security Major at the Lawton Correctional Facility, located at 8607 S. E. Flower Mound Road in Lawton, Oklahoma.

2.

At the time the claims alleged in this complaint arose, was this Defendant acting under Color of state law? Yes. If your answer is 'yes', briefly explain: Defendant Harding is employed by the Lawton Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates.

(e)   The **Fifth** Defendant, **J. Rankins,** who is being **named in his Individual and Official capacity,** is employed as a Registered Nurse/Health Service Administer at the Lawton Correctional Facility located at 8607 S. E. Flower Mound Road in Lawton, Oklahoma. At the time the claims alleged in this complaint arose, was this Defendant acting under Color of state law? Yes. If your answer is 'yes', briefly explain: Defendant Rankins is employed by the Lawton Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates.

(f)   The **Sixth** Defendant, **F. Williams,** who is being **named in his Individual and Official capacity,** is employed as a Physician Assistant at the Lawton Correctional Facility, located at 8607 S. E. Flower Mound Road Road in Lawton, Oklahoma. Defendant Williams is employed as a Physician Assistant by the Law Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates.

(g)   The **Seventh** Defendant, **A. Wolf,** who is being **named in her Individual and Official capacity,** is employed as a Lieutenant at the Lawton Correctional Facility, located at 8607 S. E. Flower Mound Road Road in Lawton, Oklahoma. Defendant Wolf , who's often referred to as the "Facility Drunk" is employed by the Law Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates.

(h)   The **Eighth** Defendant, **"Jane Doe" Mudd,** who is being **named in her Individual capacity,** is employed as a Correctional Officer at the Lawton Correctional Facility, located at 8607 S. E. Flower Mound Road in Lawton, Oklahoma. Defendant Mudd is employed by the Law Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates.

(I)   The **Ninth** Defendant, **D. McClung**, who is being **named in her Individual and Official capacity**, is employed as a Correctional Officer at the Lawton Correctional Facility, located at 8607 S. E. Flower Mound Road in Lawton, Oklahoma. Defendant McClung is employed by the Law Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates.

(j)   The **Tenth** Defendant, **B. Collins**, who is being **named in his Individual and Official capacity**, is employed as a Correctional Officer at the Lawton Correctional Facility, located at 8607 S. E. Flower Mound Road in Lawton, Oklahoma. Defendant Caldwell  is employed by the Law Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates. He is one of two the Assistant Wardens

(k)   The **Eleventh** Defendant, **Hector Rios**, who is being **named in his Individual   and Official capacity**, was employed as a Correctional Officer at the Lawton Correctional Facility, located at 8607 S. E. Flower Mound Road in Lawton, Oklahoma. Defendant Rios is a former employee of the Law Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates. At the time of this complaint, Defendant Rios was Warden at the Lawton Correctional Facility.

(L)   The **Twelth** Defendant, **Mr. Carlile**, who is being **named in his Individual and Official capacity**, is employed as a Correctional Chaplain at the Lawton Correctional Facility, located at 8607 S. E. Flower Mound Road in Lawton, Oklahoma. Defendant Carlile is a **Religiously Bias**[2] Chaplain at the Law Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates. At the time of this complaint, Defendant Rios was Warden at the Lawton Correctional Facility.

(M)  *The Thirteenth Defendant, A. Craig, who is being named in her Individual and Official capacity, is employed as a Correctional Case... (see reverse side)*

## Jurisdiction

Jurisdiction of this Court is invoked pursuant to 42 U.S.C. s/s1983; 28 U.S.C. s/s1343(a)(3); and 42 U.S.C. s/s 1985 & s/s1986.

---

2   Mr. Carlile has openly stated on more than one occasion that all Muslims, and those who don't believe as he believes, is going to hell.

4.

8607 S.E. Flower Mound Road in Lawton, Oklahoma.

At the time the claims alleged in this complaint arose, was this Defendant acting under color of state law? Yes! If "Yes", briefly explain:

Defendant Craig is employed by the Lawton Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates.

(N.) The Fourteenth Defendant, "John Doe" Dorsey, who is being sued in his Individual and Official capacity, is employed as a Corrections Officer at the Lawton Correctional Facility, located at 8607 S.E. Flower Mound Road in Lawton, Oklahoma.

At the time the claims alleged in this complaint arose, was this Defendant acting under color of state law? Yes! If "Yes", briefly explain:

Defendant Dorsey is employed by the Lawton Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates. He's the Disciplinary Hearing Coordinator.

(O.) The Fifteenth Defendant, "John Doe" Clark, who is being sued in his Individual and Official capacity, is employed as a Corrections Officer at the Lawton Correctional Facility, located at 8607 S.E. Flower Mound Road in Lawton, Oklahoma.

At the time the claims alleged in this complaint arose, was this Defendant acting under color of state law? Yes! If "Yes", briefly explain:

Defendant Clark is employed by the Lawton Correctional Facility, which is a Private Prison under contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates. He's the Disciplinary Hearing Officer.

## Nature Of The Case

The Plaintiff, **Ab'dullah Lamar Rashid Muhammad**, is a handicap[3] inmate who's currently confined at the Lawton Correctional Center[4] (hereinafter L.C.F.), a Private Prison in Lawton, Oklahoma pursuant to a contract with the State of Oklahoma/Oklahoma Department of Corrections to house Oklahoma inmates in a feeble attempt to combat the overcrowded Oklahoma Prison System.

The lead Defendant in this case is **Latoya Dawson**. Defendant Dawson is employed by the GEO Corporation out of Florida, and assigned to the Lawton Correctional Facility (hereinafter L.C.F.) as one of several Captains at said facility.

That from March 27th, 2018 until May 30th, 2018, Defendant Dawson not only threatened to place the Plaintiff in the Segregation Housing Unit (SHU) for complaining about her junior staff member (C/O Latimer), but also **endangered** the Plaintiffs **life** on more than one occasion by preventing the Plaintiff from going to medical to get his insulin injections.

That on April 13th, 2018 at 1540 hours, after the Plaintiff filed several complaints against Defendant Dawson, Defendant Dawson, in **RETALIATION** to the Plaintiffs continued complaints against her, out-right **THREATENED** the Plaintiffs life, and then tried to conceal her actions by first filing and causing to be filed, **"BOGUS"** offense reports (**Attachment -X and XVIII**) *against the* Plaintiff, and second, by having one of her fellow employees (Defendants' Parnell, Green, R. Harding, Rankins, Williams, Wolf, Mudd, McClung, Caldwell, and Rios), who each acted in concert with the other, to conspire with and aid her (Defendant Dawson) in an attempt to conceal her wrongful actions by among other things, placing the Plaintiff on a **"BOGUS"** Grievance Restriction (**Attachment-XX**) *so that they, Defendants' Wolf, Harding, Collins, and Rios wouldn't have to answer/address complaints against Defendant Dawson.*

That soon thereafter, the Defendants fellow employees, defendant's **R. Parnell, Bonnie Green, R. Harding, J. Rankins, F. Williams, A. Wolf, Mudd, D. McClung, B. Collins,** and **H. A. Rios** who are **each** being **named in their individual and official capacity's**, and are all employees of the L.C.F., in at attempt to cover for and conspire with Defendant Dawson, set out to lie and conceal Defendant Dawson's illegal actions and aid/conspire with her in the violation of the Plaintiffs constitutional rights. *the That on 10-26-18, just one day after the Plaintiff was returned to the L.C.F. from the I.H.C.C., Defendant Craig filed "false" misconduct charges against the Plaintiff, and the Defendants Dorsey and Clark found Plaintiff guilty in a "staged" investigation and Disciplinary hearing that they refused to allow the Plaintiff to attend.* **Further detailed facts are:**

3   Mr. Muhammad has been confined to a wheelchair since '2011 following a work related accident at the Oklahoma State Penitentiary in McAlester, Oklahoma in '2006

4   Mr. Muhammad was transferred to the L.C.F. after reporting staff corruption at the Lexington Correctional Center in Lexington, Oklahoma

*Further Facts are:*

1.  That on March 27th, 2018, after an L.C.F. Correctional Officer[5] entered the Plaintiffs' housing unit cursing the inmates/offenders and shouting out gang remarks and throwing up gang signs[6] in an attempt to cause tension between the rival gang members[7], so the Plaintiff reported the incident to Defendant Dawson who, instead of saying something to or correcting her junior officers conduct, turned on the Plaintiff and **threatened** to place the Plaintiff in the Restrictive Housing Unit (hereinafter R.H.U.) for complaining about her fellow staff members dangerous behavior.[8]

    That because of Defendant Dawson's **threat** to place the Plaintiff in R.H.U. for reporting the actions of her junior officer, the Plaintiff filed a "Request to Staff" **(Attachment I)** to Defendant Rios, Warden of the L.C.F. regarding Defendant Dawson's **threat** to place the Plaintiff in R.H.U. for his (Plaintiff) use of the Grievance Process since Oklahoma Department of Corrections (hereinafter D.O.C.) Policy strictly prohibits RETALIATION for use of the Grievance Process........

### D.O.C. Policy OP-090124
### *Section II. Grievance Procedure Guidelines*

A. Grievance Issues

> 1. A grievance will be used to address issues regarding conditions of confinement, **ACTION OF STAFF**, and incidents occurring within or under the authority and control of D.O.C. that have personally affected the inmate/offender making the complaint and for which a remedy may be allowed by the agency or by law. (2-CO-4B-03, 4-4301)
>
> ### *Reprisals*
>
> An inmate/offender **WILL NOT** suffer **REPRISALS** for submitting a grievance in good faith. (1.) A reprisal means **ANY ACTION** or **THREAT OF ACTION** against anyone for using the

---

5  C/O Latimer, who's not named as a Defendant in this case
6  The Plaintiff is not a gang member. However, the actions of this staff member placed the Plaintiff as well as his fellow staff members' in a dangerous situation that could have resulted in the Plaintiff being injured, or worse.
7  L.C.F. is a major gang yard with the Oklahoma Department of Corrections, and Plaintiffs' housing unit is full of Bloods and Hoovers, and this C/O was claiming Neighbor Hood
8  A check in C/O Latimer's employment file will without doubt reveal that several complaints have been filed by both staff and inmates regarding this officers behavior, but Defendants Wolf ( Lieutenant), Dawson (Captain), R. Harding (Major), Collins (Asst. Warden), and Rios (Warden) have all condoned his actions.

grievance process. Actions taken in accordance with the abuse of process procedure below or discipline for false statements are not reprisals.(2.) A grievance may be submitted if the inmate/offender feels any reprisal has occurred.

That on April 10th, 2018, the Plaintiff submitted a grievance (**Attachment I-a.**) to Defendant Rios, but on the same day, Defendant Wolf intercepted and refused to answer the Plaintiffs grievance against her supervisor, Defendant Dawson, for the alleged reason that Plaintiff supposedly requested disciplinary action against Defendant Dawson (**Attachment-I b.**), when in fact he did not.

2.      That on March 28th, 2018, after C/O Latimer again came into Plaintiffs housing unit shouting "Real Nigga in the house, Neighbor Hood", the Plaintiff, knowing that he couldn't again report this C/O's behavior to his supervisor, Defendant Dawson for the reasons set forth in **Attachment-I**, filed a "Request to Staff" (**Attachment-II**) to Defendant Rios about this facility's policy, practice, and procedure in blatantly allowing its' staff to openly abuse their authority (See also, **Attachment-XIV**).

Warden/Defendant Rios, as is his policy when ignoring an issue/complaint about staff misconduct, didn't even bother to respond to Plaintiffs "Request to Staff"

3.      That on April 10th, 2018, in DELIBERATE **RETALIATION** to Plaintiffs complaint against her, Defendant Dawson, in an **INTENTIONAL** and **DELIBERATE** attempt to cause the Plaintiff harm, refused to let the Plaintiff go to medical to get his much needed insulin injection, so the Plaintiff filed a "Request to Staff" (**Attachment-III**) to Defendant Rios.

That on April 14th, 2018, Defendant Wolf, pursuant to Defendant Dawson's orders, scratched out Defendant Rios' name off of said "Request to Staff" (**Attachment-III**), and sent it to Defendant R. Harding who, tried to play word games in his response (**Attachment-III, bottom of page**), so the Plaintiff filed a grievance (**Attachment-III a.**) to Defendant Rios, but Defendant Wolf[9] stopped and returned the Plaintiffs grievance (**Attachment-III b.**) for the <u>**alleged reason**</u> that Plaintiff failed to attach a "Request to Staff" to his grievance, which was not true, but on April 26th, 2018, Plaintiff re-submitted his grievance (**Attachment-IV a.**) to Defendant Rios.

9   Defendant Wolf (Lieutenant) works for and actually shares an office with Defendant Dawson (Captain), and has been acting directly under Defendant Dawson's orders regarding Plaintiffs complaint against her, and has been doing her (Wolf) best to quiet the Plaintiff and prevent his complaints from being adequately. addressed

That on May 1st, 2018, in an attempt to prevent the Plaintiff from continuing his rightful effort to file and pursue his grievances against Defendant Dawson, Defendant Rios, acting on false information from Defendants Wolf and Dawson, threatened to place the Plaintiff on GRIEVANCE RESTRICTION (Attachment-IV b.) with hopes of quieting the Plaintiff and his complaints against Defendant Dawson.

4.      That on April 10, 2018, the Plaintiff attempted to send a "Request to Staff" (Attachment V) to the D.O.C. Contract Monitor[10], but it was stopped by Defendant Wolf, acting under instructions of Defendant Dawson, and re-routed to Defendant Harding, who refused to address the issue of staff misconduct, but instead, just told the Plaintiff to refer to his response (Attachment-III), which wasn't really a response at all, to his reply on Plaintiffs "Request to Staff" (Attachment-V, bottom of page).

5.      That on April 11th, 2018, at approximately 1535 hours, the Plaintiff again attempted to go to medical to take his insulin injection, but the Plaintiff was again stopped from going to get his insulin, this time by C/O Suliman[11], who informed the Plaintiff that he had received orders from Defendant Dawson (his superior) the previous day, April 10th, 2018, "**NOT**" to allow the Plaintiff to go to medical, so the Plaintiff filed a "Request to Staff" (Attachment-VI) to Defendant Rios because it was the second time that Plaintiff was prevented from receiving his insulin injection by Defendant Dawson, or due to her orders/instructions.

On April 24th, 2018, Plaintiff received a response to his "Request to Staff" (Attachment-VI, bottom of page) from Defendant Williams and Registered Nurse T. Thompson.

That on May 16th, 2018, Defendant Wolf photocopied the Plaintiffs 4/11/18 "Request to Staff"(Attachment-VI), which had previously been answered (Attachment-VI) by Defendant Williams and Registered Nurse T. Thompson, scratched out Defendant Rios' name, and sent a copy of the unanswered "Request to Staff" to Defendant Harding (Attachment -VI a.)[12], who tried to defend Defendant Dawson by trying to indicate that the Plaintiff was not being truthful, when in fact, it is clearly shown that **NOT ONLY** is Defendant Dawson blatantly lying to protect her position, the other Defendants, her fellow employees, have and continue to conspire with her in an attempt to cover/conceal her wrongful behavior.

---

10   P. Baker is the D.O.C. Contract Monitor. In part, it is his job among other things, to ensure that inmates/offenders who are housed in Private Prisons are not being abused, and that D.O.C. policies are being followed. This however, is only partially being done.

11   C/O/ Suliman is not being named as a Defendant in this case due to the fact that he was acting only on orders from Defendant Dawson.

12   By Defendant Wolf copying and distributing copies of the same Request to Staff to several people, she can falsely claim, as have, that the Plaintiff is sending the same request to staffs' out over and over.

*That on May 18th, 2018, the Plaintiff filed a grievance (Attachment-VI b.) to Defendant Rios, but on May 18th, 2018 the Plaintiffs grievance was returned to him by Defendant Wolf unanswered, with a copy of Attachment-IV 's response (Attachment-VI) attached to it.[13], placing the Plaintiff on a "BOGUS" Grievance Restriction to try and shut the Plaintiff up.*

Defendant Wolf, as basis for her **"BOGUS" Grievance Restriction,** has alleged:

a.   Continual and repeated submitting of frivolous grievances.

b.   Repeated submitting of grievances or "request to staff" about an issue previously addressed by staff in their written response.

c.   Grievances about de minimis (small, trifling, no available remedy) issues.

d.   Repetitive error in filing grievances.

**FIRST**: A **"THREAT"** made against Plaintiffs life by a senior prison guard who has a track record like Dawson's, is in no way frivolous, and should be dealt with in an appropriate manner, and **NOT** just pushed under the rug, as these Defendants have continue to try to do. **SECOND**: Not once has the issue of Defendant Dawson **THREATENING THE PLAINTIFF'S LIFE** every been adequately addressed. Defendants two through eleven has done nothing but annoy the Plaintiff, issue the Plaintiff **"BOGUS"** offense reports, and attempt to endanger the Plaintiff's life. All to cover up for and conceal there fellow employees (Defendant Dawson's) actions. **THIRD**: I understand that Defendant Harding, Defendant Wolf, and Defendant Green are all **KNOWN RACIST** (They especially don't like blacks or Muslims) throughout this facility, but a **THREAT** against Plaintiffs life is not small, or trifling as they (Harding, Wolf, and Rios) claim. I f Plaintiff were to threaten the life of a staff member, not only would Plaintiff be issued an offense report, but he'd also be immediately transferred to a maximum security facility in light of the recent  shooting of former L.C.F. Correctional Officer DeWalt. Contrary to what Harding, Wolf, and Rios claim, the Plaintiffs life is just as important as there's is. **FOURTH**: Not once has there been any error's in or on the Plaintiffs grievances. That was just one of the lies told by Defendants Harding, Wolf, and Rios to prevent the Plaintiff from voicing his complaints against Defendant Dawson and those who have/are conspiring with her to violate the Plaintiffs Constitutional Rights. At this point, due to Defendant Dawson's **THREAT** against the Plaintiffs life, and her (Defendant Dawson's) fellow employees effort to cover and conceal

---

13  Plaintiff's grievances (18-215, 18-216, and 18-217) were all granted to prevent the Plaintiff from appealing or pursuing the issue, and it was at this time that Defendant Rios, based on false information from both Defendants Wolf and Dawson, placed the Plaintiff on a "BOGUS" Grievance Restriction.

her wrongful actions, the Plaintiff **don't** even **feel safe** to take his much needed **insulin** out of **fear** that the   medical staff (Nurse Rankins, Physician Assistant Williams, etc.), who has acted in concert with Defendant Dawson,  might try to inject the Plaintiff with something that may harm or even kill the Plaintiff. They've already shown there willingness to cover for one another s wrongful acts.

6.          *That on April 13th, 2018, for the third (3rd) time, C/O Latimer again came into the Plaintiffs housing unit shouting 'HOOD In The House" in an attempt to get trouble started with other gang members[14], so the Plaintiff filed another "Request to Staff" (Attachment-VII) to Defendant Rios, but Defendant WOLF again "SCRATCHED OUT" Defendant Rios' name, and again sent the Plaintiffs "Request to Staff' to Defendant Harding.*

*On April 30th, 2018, Defendant Harding responded by **trying to claim** that he had spoken to C/O Latimer about his behavior (Attachment-VII, at bottom of page), when in fact he (Defendant Harding) either did not talk to the C/O as alleged, or the C/O didn't pay him any attention because on April 18th, 2018, the C/O repeated the same behavior (Attachment-VII a)[15]*

7.          *That also on April 13th, 2018, at 1540 hours, in **RETALIATION** to Plaintiffs repeated complaints against her (Defendant Dawson), Defendant Dawson waited for the Plaintiff to show up at medical[16], where she, in **RETALIATION** to Plaintiffs constant complaints against her, not only took the Plaintiffs legal papers, but also **THREATENED THE PLAINTIFFS LIFE.** Defendant Dawson stated, and I quote........*

> *"The more you do your meaningless paper work against me,*
>
>    *the more I'm going to mess with you. **I can have anything**
>
>    *I want done to you and nobody will say anything about it"*

*unquote. Defendant Dawson then went back into the nurses station and told Defendant Parnell, (who has lied for Dawson and claimed that she never talked to Dawson), and again I quote......."WATCH WHAT I DO TO HIM NEXT"*

---

14  As previously stated, the Plaintiff is not a gang member, but he (Plaintiff) is confined to a wheelchair, so if the gangs were to clash or riot  as a result of this C/O's reckless behavior, the Plaintiff could be seriously harmed or worse. This guards a threat to both staff and inmates/offenders alike (See, Butler v. Rios, CIV-17-364-F).

15  It should be noted that this C/O's RECKLESS BEHAVIOR/ACTIONS are what lead to the Problems between the Plaintiff and Defendant Dawson, because she (Defendant Dawson) refused to address his behavior from the beginning, on March 27th, 2018

16  The Plaintiff had stopped at medical on his way from his religious (Jumah) service to get his insulin injection

*Taking into consideration where the Plaintiff is[17], and Defendant Dawson's position[18], which she uses to abuse her authority by openly and wrongfully using unnecessary force assault) on the inmates/offenders, the Plaintiff is left with **NO CHOICE** but to consider, with good cause, Defendant Dawson's statement "**I CAN HAVE ANYTHING I WANT DONE TO YOU, etc.**", as an **OUT-RIGHT THREAT** against the Plaintiffs life.[19]*

*Therefore, on this same day, April 13th, 2018, the Plaintiff filed a "Request to Staff" (Attachment-VIII) to Defendant Rios. On April 23rd, 2018, Defendant Wolf, pursuant to instructions of Defendant Dawson, again scratched Defendant Rios' name off of Plaintiffs "Request to Staff" (Attachment-VIII), and sent it to Defendant Harding[20] who, with the aid of Defendant Parnell[21], lied and claimed that Defendant Dawson never said anything to the Plaintiff when he came to medical, which is an out-right lie (Attachment-VIII, bottom of page). Defendant Parnell, in an attempt to cover for/conspire with Defendant Dawson, lied and stated (1) that she didn't see Defendant Dawson take anything from the Plaintiff[22], (2) that she did not hear Defendant Dawson say anything to Plaintiff, and (3) THE Defendant Dawson did not say anything to the Plaintiff[23] (Attachment-VIII, bottom of page).*

*That on April 24th, 2018, the Plaintiff filed a grievance (Attachment-IX) to Defendant Rios, asking that he look into and address the issue of her (Defendant Dawson) **THREATENING** the Plaintiff, but instead of answering the Plaintiffs grievance, Defendant Wolf, pursuant to instructions from Defendant Dawson (her Supervisor that she shares an office with), returned the Plaintiffs' grievance with Attachment VI c. attached to it, wherein the Plaintiff was threatened with a grievance restriction if he continued to use the grievance process and file "Request to Staffs" and "Grievances" against her supervisor, Defendant Dawson.*

---

17  **A MAJOR gang YARD**

18  **Defendant Dawson not only hold the rank of Captain, she's in charge of "SECURITY THREAT GROUP" (S.T.G.), and her boyfriend, Lt. Adams is also employed her, and works under her supervision.**

19  **For an L.C.F. staff member, especially someone like Defendant (Captain) Dawson, who's clearly a vindictive person, is not something that's unheard of, or that hasn't happened before at this facility. It happens a lot**

20  **Defendant Harding has been trying to cover for Defendant Dawson by playing word games in his responses out of hope that it will discourage the Plaintiff from continuing to pursue his complaint against Defendant Dawson**

21  **Defendant Parnell is a nosy old women who's posted in the medical unit and openly disrespects inmates/offenders on a daily basis, and threatens to either kick them out of medical, or lock them up if they complain or talk back.**

22  **See, Attachment-VI a. wherein Defendant Harding basically admitted that Defendant Dawson did in fact take Plaintiffs legal papers. Also, a check of the security camera for the day of 4/13/18, at 1530 hours, will not only show that Dawson did take the Plaintiffs legal papers, but that Defendant Parnell knew about and witnessed it, and is now lying to cover for and conspire with Defendant Dawson**

23  **Defendant Parnell is blatantly lying to cover for Defendant Dawson. See, Attachment-VII, back of page**

8.      *That on April 13th, 2018, at 1550m hours, just ten(10 minutes after the Plaintiff wrote a "Request to Staff" against her (Defendant Dawson) for THREATENING his life (Attachment-VIII), Defendant Dawson, in a feeble attempt to cover her actions and RETALIATE against the Plaintiff, wrote a "BOGUS" offense report (Attachment-X) against the Plaintiff.*

*That on April 16th, 2018, during the course of an investigation of Defendant Dawson's BOGUS offense report against the Plaintiff (Attachment-X b.), the disciplinary coordinator DISMISSED said BOGUS offense report after Plaintiff presented clear evidence[24] showing that Defendant Dawson had **NOT ONLY** issued the Plaintiff said BOGUS offense report just ten (10) minutes after the Plaintiff had reported her for THREATENING his life, but that said BOGUS offense report was clearly written against the Plaintiff in DELIBERATE RETALIATION to Plaintiffs continued complaints against her, Defendant Dawson.*

9.      *That on this same date, April 13th, 2018, prior to her (Defendant Dawson's) THREAT against the Plaintiffs life, Defendant Dawson had been called to medical by Defendant Parnell, where she spoke to both Defendants Rankins (Registered Nurse/Health Service Administer) and Williams (Physicians Assistant) about the Plaintiffs complaints against her (Defendant Dawson), and shortly thereafter, in what can only be construed as an attempt on the Plaintiffs life by the medical staff, Defendant Williams wrongfully took the Plaintiff off of his insulin injections[25], so the Plaintiff sent Defendant Williams a "Request to Staff" (Attachment-XI) asking "WHY" he took the Plaintiffs insulin from him knowing that it could result in the Plaintiff going into a DIABETIC COMA, but as of this date, Defendant Williams has flat out refused to answer the Plaintiffs' "Request to Staff", so the Plaintiff filed a formal complaint against Defendant Williams with the State Medical Board[26].*

10.     *That on May 16th, 2018, the Plaintiff sent a "Request to Staff" (Attachment-XII) to Defendant Rios after Defendant Wolf (Lieutenant & Grievance Officer), in conspiracy with Defendant Dawson, threatened to place the Plaintiff on Grievance Restriction in violation of D.O.C. Policy OP-090124 to prevent the Plaintiff from pursuing his grievance against her supervisor, Defendant Dawson who, on April 13th, 2018, THREATENED the Plaintiffs life.*

*That on May 21st, 2018, in response to Plaintiffs "Request to Staff" (Attachment-XII a.), and in conspiracy with Defendants Wolf and Dawson, Defendant Rios[27] placed the Plaintiff on a BOGUS grievance restriction for the following alleged reasons:*

---

24 Attachments I thru VI
25 Plaintiffs blood sugar runs between 350 and 550 which is a well known fact by Defendants Rankins and Williams, so for either of them to take the Plaintiff off his insulin, knowing that such act could lead to the Plaintiffs death, was out right negligence on the part of Defendants Rankins and Williams
26 As of this date, no response has been received from the State Medical Board

    a.    *Continual and repeated submitting of frivolous grievances.*

    b.    Repeated submitting of grievances or "request to staff" about an issue previously addressed by staff in their written response.

    c.    Grievances about de minimis (small, trifling, no available remedy) issues.

    d.    *Repetitive error in filing grievances.*

*See, Plaintiffs response to the alleged reasons given by Defendants Wolf and Rios on Page 7, #5, paragraph 3. As shown therein, Defendants Wolf and Rios has out right stated (1) that Plaintiffs complaint about Defendant Dawson **THREATENING** his (Plaintiffs) **LIFE**, is frivolous, as if the Plaintiffs life doesn't matter, and (2) the Plaintiffs complaint against Defendant Dawson for **THREATENING** his **LIFE** is small, trifling, and has no remedy, so the **ONLY SOLUTION** is to place the Plaintiff on a "**BOGUS**" **GRIEVANCE RESTRICTION** in hopes of shutting the Plaintiff up and preventing his use of the Grievance Process.*

11.    *That on April 17ᵗʰ, 2018, in further **RETALIATION** to Plaintiffs complaint against her (Defendant Dawson) for **THREATENING** his **LIFE**, and in an attempt to conceal her wrongful actions, Defendant Dawson called the Plaintiffs correctional case manager, Defendant Green, and attempted to have Defendant Green to aid her in **RETALIATING** against the Plaintiff by wrongfully dropping the Plaintiff earned credit level without justification, so on April 18ᵗʰ, 2018, the Plaintiff sent Defendant Green a "Request to Staff" (Attachment-XIII) to Defendant Green, accusing her of conspiring with Defendant Dawson to violate my (Plaintiffs) constitutional rights, which she all but admitted to.*

*On April 23ʳᵈ, 2018, Defendant Green responded to Plaintiffs "Request to Staff" (Attachment XIII, bottom of page) and tried to justify her actions by claiming that her justification to drop the Plaintiffs level for (1) Plaintiffs behavior towards staff and other inmates, (2) No    job, (3) Not doing my assessed programs, and (4) cell cleanliness.*

*That on April 26ᵗʰ, 2018, in response to Defendant Green's feeble response to the Plaintiffs "Request to Staff" (Attachment-XIII), the Plaintiff filed a grievance to Defendant*

---

27 **Defendant Rios is scheduled to retire from the position of Warden of L.C.F. at the end of July'2018, and return to Texas**

Rios[28] *(Attachment XIII a.) because of Defendant Greens clear and unquestionable conspiracy to aid/conspire with Defendant Dawson in the violation of the Plaintiffs Constitutional Rights as shown on the Plaintiffs Oklahoma State Department of Corrections Adjustment Review/Earned Credit Level[29] (Attachment-XIII b., c. and d.).*

12.　　　*That also on April 17th, 2018, since it was clear that the facility was going to continue to cover for, attempt to conceal, and conspire with Defendant Dawson, the Plaintiff filed a formal complaint against Defendant Dawson with the American Civil Liberties Union (ACLU) of Oklahoma (Attachment-XVI)[30]*

13.　　　*That On April 18th, 2018, after his (Defendant Rankins, Registered Nurse/Health Service Administrator) repeatedly allowing non-medical staff (Defendant Parnell) to have access to and respond to inmates/offenders medical issues, Plaintiff filed a "Request to Staff" (Attachment-XV) to Defendant Rankins informing of the privacy laws (HIPPA) regarding an individuals medical files and records, but Defendant Rankins, in his response to Plaintiffs "Request to Staff", just sent the Plaintiff a slick response (Attachment-XV, bottom of page).*

　　　*On April 27th, 2018, the Plaintiff filed a Grievance (Attachment-XV a.) to Defendant Rios, but on May 15th, 2018, Defendant Rankins responded to my complaint against him that was sent to Defendant Rios and denied Plaintiffs grievance claiming that all facility staff go through HIPPA compliance training[31], which may be true but still does not give him the authority or legal right to divulge Plaintiffs medical information to non-medical personnel without the Plaintiffs written consent, so Plaintiff appealed Defendant Rankins' decision to the Appellate Review Authority at the D.O.C. Medical Directors office.[32]*

---

28  All "Request to Staffs" and "Grievances" sent to Defendant Rios regarding the actions of Defendant Dawson, and those who have conspired with her to conceal the complaint or made light of it), were either re-routed to Defendant R. Harding (who basically ignored the complaint or made light of it), or responded to by Defendant (Lieutenant) Wolf who shares an office with and takes instructions/orders from Defendant (Captain) Dawson, who is her immediate supervisor

29  As shown in sections three (Patterns of Behavior) and four (Case Plan) of these Attachments (XIII b. and c. and d.), it clearly disputes Defendant Greens alleged justification to drop the Plaintiff's level, and shows that Defendant Green was in fact just acting on/conspiring with Defendant Dawson to violate the Plaintiffs Constitutional Rights.. Plaintiffs Pattern of Behavior clearly shows <u>Outstanding</u> in all ares mentioned by Defendant Green

30  No response from ACLU as of this date, nor is their any proof that the facility even mailed the Plaintiffs complaint out as requested

31  See, HIPPA laws 45 C.F.R. s/s 160.103; s/s 164.502; and s/s 164.508. At no time was Defendant Rankins authorized to release, to a non-medical personnel, any of the Plaintiffs medical information, except to the State Medical Board the ACLU of Oklahoma.

32  Response pending

**14**   That also on April 18[33]th, 2018, after the Plaintiff was informed by another staff member [33] that Defendant Dawson was trying to get Defendant Green to aid her in trying to **RETALIATE** against the Plaintiff by dropping the Plaintiffs earned credit level from level IV to level I without justification **(Attachments-XIII and XVII)**

**15.**   That on April 26th, 2018, pursuant to instructions/orders from her (Defendant Mudd[34]) supervisor, Defendant Dawson[35], Defendant Mudd issued the Plaintiff another **BOGUS** offense report **(Attachment-XVIII)** claiming that the Plaintiff allegedly coerced staff by **allegedly** threatening to flood the unit.

That On May 2nd, 2018, the day after Plaintiff was served with a copy of said **BOGUS** offense report, and during the course of an alleged investigation by C/O Sandt (Mrs. Sandt is not named as a Defendant in this case), the Plaintiff requested as a witness to his case, Defendant Mudd's supervisor[36] who knew that the Plaintiff never made the statement claimed by Defendant Mudd, but Defendant Mudd's supervisor refused to make a statement in favor of the Plaintiff against his junior officer **(Attachment-XIII b.)**.

That on May 7th, 2018, in what can only be described as a **"STAGED" DISCIPLINARY HEARING**[37] was conducted by Defendant McClung who, **pursuant to orders** from Defendant Dawson, to Defendant Rios. and despite the fact that their was **"NO EVIDENCE"**[38] to support the offense charged against the Plaintiff, still found the Plaintiff guilty **(Attachment-XVIII c.)** of said **BOGUS** offense report. Plaintiff appealed **(Attachment-XVIII d.)**.

That on May 30th, 2018, Defendant Wolf, acting in behalf of her supervisor(Defendant Dawson), intercepted Plaintiff's appeal of said BOGUS offense report, ignored what the Plaintiff clearly showed in his appeal, and affirmed Defendant McClungs conviction **(Attachment-XVIII e.)**, which was four(4) days after the Plaintiff had filed a complaint

---

33   To prevent this staff member from being harassed by fellow staff members, his/her name will not be revealed unless so ordered by this Court

34   Defendant Mudd is a female employee who is not only constantly ridiculed by inmates/offenders because of her foul odor, shes has also had PREA complaints filed against her by male inmates/offenders as well.

35   A "BOGUS" offense report (Attachment-X) that was written against the Plaintiff by Defendant Dawson was dismissed after it was shown that Defendant Dawson had only written the "BOGUS" offense report in "RETALIATION" to Plaintiff's complaints against her, and only ten (10) minutes after the Plaintiff filed a complaint Against her for THREATENING his LIFE

36   Sgt. Campbell, who Defendant Mudd had originally told that Plaintiff had threatened to flood the unit, and who the Plaintiff, in front of C/O Mudd, confronted about lying to the Sargent about what the Plaintiff had said. Even the Sargent stated at that time that he did not believe Defendant Mudd

37   Pursuant to D.O.C. policy OP-060125, disciplinary hearings are not conducted on alleged "Class A & B" offenses. In the Plaintiffs case, to make it appear that the Plaintiff was provided with a due process hearing, a "MOCKED" hearing was conducted

38   It should be noted by this Court that Defendant McClungs supervisor is in fact Defendant Dawson, who dictates to her junior staff what to do, and none of them, whether right or wrong, will go against Defendant Dawson because they know that she is vindictive, and will get them fired

(Attachment-XIX) against her (Defendant Wolf) for violation of D.O.C. policy Op-090124, at pg. 5, sec. d.1 and 2.[39]

In the current case, there was NO EVIDENCE whatsoever to support the charge or conviction. Defendant M{c}Clung made it perfectly clear that it did not natter what the Plaintiff said, that he would be found guilty of the alleged rule violation.

16. That on May 16th, 2018, the Plaintiff filed a "Request to Staff" (Attachment-XIX) to Defendant Rios against Defendant Wolf for trying to prevent the Plaintiff from pursuing his grievance against her supervisor, Defendant Dawson, by threatening to place the Plaintiff on a BOGUS GRIEVANCE RESTRICTION.

That on May 17th, 2018, said complaint/ "Request to Staff" (attachment-XIX) against Defendant Wolf was intercepted by Defendant Wolf, re-routed to Defendant R. Harding who, as is his practice, totally disregarded the Plaintiffs complaint without a proper investigation, and aided his junior officer (Defendant Wolf) in attempting to conceal the actions of his staff (Attachment-XIX, at bottom of page).

That on May 25th, 2018, the Plaintiff filed a Grievance (Attachment-XIX a.) to Warden/Defendant Rios, but said Grievance was intercepted by Defendant Wolf (XIX b.) and returned to the Plaintiff with a "BOGUS" GRIEVANCE RESTRICTION (Attachment-XX) signed by Defendant Rios.

That on July 19th, 2018, at approximately 1530 hours, and in conspiracy with Defendant Dawson, Defendant Carlile, acting on instructions from Defendant Rankins, came to the Plaintiffs housing unit and told the Plaintiff that he needed to choose to receive either medical treatment [40] or his religious meals [41]. Plaintiff informed Defendant Carlile [42] that he couldn't force him (Plaintiff) to choose between two Constitutionally Guaranteed Rights [43], but Defendant Carlile (acting on and pursuant to instructions from Defendant Rankins) then stated, and I quote "I can care less whether you (Plaintiff) eat or not. If you .refuse to sign this medical waiver, I'm going to take you off of your religious diet and you will no longer receive your religious meals [44], and you can sue all you want, I could care less" unquote. On 8-13-18, Defendant Carlisle stopped Plaintiff from receiving his religious (Halal) meals. Plaintiff currently on "Hunger Strike".

---

39 Pursuant to D.O.C. policy Op-060125, at pg. 6. F. (Standard of Proof), the trier (D. H. O.) of facts MUST find that there is SOME or ANY EVIDENCE that the inmate committed the rule violation
40 Plaintiff is a type two insulin dependent diabetic whose blood sugar runs between 350 and 550.
41 Plaintiff is a known Muslim, and as such, is now and has been since and prior to his arrival at this private facility, on a Halal (Religious) diet
42 Defendant Carlile is not medical personnel, and should not have been acting in behalf of medical for any reason.
43 Right to freely practice his religious beliefs, and his right to receive medical treatment
44 Plaintiff has been at the L.C.F. (Private Prison) since November 29th, 2017, and has been on and receiving his approved Religious/Halal meals prior to and since his arrival at the L.C.F.

17. . . . . . That in or around July 2018, after the Plaintiff's life was threatened by Defendant Dawson, the Plaintiff went on a "Hunger Strike" requesting to be transfered.

18. . . . . . That on August 13th, 2018, the new Warden of the L.C.F. (R.C. Smith) had the Plaintiff placed in disciplinary segregation after learning that Plaintiff was and had been on a "Hunger Strike" since July 2018.

19. . . . . . That on or about August 15th, 2018, the L.C.F. Medical Staff had the Plaintiff removed from the segregation unit and placed in a medical observation cell inside of medical, but soon thereafter had the Plaintiff transported by ambulance to the emergency room at the Comanche County Hospital in Lawton, Oklahoma. Plaintiff was returned to L.C.F. later this day.

20. . . . . . . That on August 17th, 2018, just two (2) days after being released from the Comanche County Hospital in Lawton, Oklahoma, and due to Plaintiffs declining health, L.C.F. Doctor Mrs Leper had the Plaintiff transported to and admitted to the Lindsey Municiple Hospital in Lindsey, Oklahoma, a D.O.C. contracted hospital.

21. . . . . . . That on August 21st, 2018, the Plaintiff was discharged from the Lindsey Hospital and returned to L.C.F. and placed back in the L.C.F. medical unit, where he remained.

22. . . . . . . That on September 19th, 2018, just two (2) days after the Plaintiff originally filed this civil complaint and protective order against the first twelve (12) Defendants, the Plaintiff was transferred from the L.C.F. Medical Unit to the I.H.C.C. (Medical Wan) in McAlester, Oklahoma, where he remained for thirty-six (36) days.

23. . . . . . . That on October 25th, 2018, the Plaintiff was discharged from the I.H.C.C. in McAlester, Oklahoma and returned to the L.C.F. in Lawton, Oklahoma.

24. . . . . . . That upon arrival back at the L.C.F., and for "No Justified Reason" other than to retaliate against the Plaintiff and set the stage to file "False" misconduct charges against the Plaintiff for filing suit against the L.C.F. staff, the Plaintiff was immediately placed in disciplinary segregation,

-18-

with "No Pending Misconducts" or back "D.U." time whatsoever at this time.

25. . . . . . . That on October 26th, 2018, the day after Plaintiff was returned to the L.C.F., and just 39 days after Plaintiff filed suit against Defendant Dawson for "Threatening" his life, Defendant Dawsons' co-worker, Defendant Craig, acting in behalf of and pursuant to instructions from Defendant Dawson, lied and claimed that Plaintiff had just threatened Defendant Dawson, and she (Def. Craig) filed "False/Bogus" misconduct charges against the Plaintiff (Attachment-XXII), and then tried to get another case manager (Mr. Blay) to lie and write a statement for her, supporting her "False Misconduct Charges" against the Plaintiff, which he refused to do (see, Attachment-XXIV, Mr. Blay's refusal to write a statement for Defendant Craig).

26. . . . . . . That on November 2nd., 2018, Defendant Dorsey, instead of investigating the alleged rule violation as required by policy (D.O.C. OP-060125, at sec. III, B., 6. b.), Defendant Dorsey lied and marked on his report that Plaintiff had no statement or witnesses in his defense (Attachment-XXV) (Clearer copy at: Attachment-XXVII b.), which was not true. Defendant Dorsey was just attempting to prevent the Plaintiff from being able to put on the record that the "False" misconduct charge was in retaliation to Plaintiffs' suit against his supervisor, Defendant Dawson.

27. . . . . . . Defendant Dorsey then set Plaintiffs' disciplinary hearing to take place on November 5th, 2018 at 0800 hours, but "No Hearing" took place on this date and time, making the "False" misconduct null and void since no "Extension" was made/given.

28. . . . . . . That on November 9th, 2018, four (4) days past the deadline to even take Plaintiff to a hearing (see, OP-060125 at pg. 21, sec. VII. A. 2.), Defendant Clark held a "secret"/private disciplinary hearing without allowing the Plaintiff an opportunity to even attend said hearing (see, Attachment-XXVI, at sec. II). When questioned by Plaintiff, Defendant Clark stated, and I

19.

quote "We had a facility lockdown, so I did it without you. I found you guilty" unquote. First of all, Plaintiffs' hearing was scheduled for November 5th, 2018, not the 9th, and the facility didn't go on lockdown until November 7th, 2018, two (2) days after Plaintiffs' scheduled hearing. Secondly, when two (2) different case managers (Mrs. Meloni and Mrs. Frizzell) asked Defendant Clark "Why" he didn't take Plaintiff to his scheduled disciplinary hearing on 11-5-18, Defendant Clark told them that, and I quote "I'm not going to let him come to the hearing when he threatened staff. I just found him guilty" unquote.

29. . . . . . On November 13th, 2018, Defendant Collins, who was already named as a Defendant in Plaintiffs' 9-17-18 Civil Complaint, and in retaliation to Plaintiffs' suit against him and other administrative staff, affirmed Plaintiffs' "Bogus" and "Staged" disciplinary hearing conviction. (Attachment - XXVI, at sec. II and III).

30. . . . . . That on November 28th, 2018, Plaintiff said "Staged" misconduct conviction (Attachment - XXVII) to Warden R. C. Smith, but it was answered by Defendant Wolf, who is also named as a "Key" Defendant in Plaintiffs' 9-17-18 Civil Complaint against Defendant Davison.

31. . . . . . That on December 6th, 2018, pursuant to "Orders" from Warden Smith, and only because Smith instructed her to, Defendant Wolf ordered a re-hearing (Attachment - XXVIII d.), but in doing so, and in a last ditch effort/attempt cover for and conceal the wrongful actions of staff, yet again, Defendant Wolf lied and stated . . . . .

"Through no fault of staff and inmate hearing was held with him being present"

Defendant Wolf's response made "no" sence, because staff (both, Defendant's Dorsey and Clark) was at fault when they (1) Defendant Dorsey refused to investigate the "false" misconduct change, and (2), Defendant Clark intentionally refused to let me attend that "Staged" disciplinary hearing. (Attachment - XXVIII d)

20.

## Conclusion of "Nature of Case"

*That from March 27th, 2018, the day the Plaintiff complained about and was later*
***THREATENED by Defendant Dawson, to May 30th, 2018, the day that Plaintiff was placed***
*on a **BOGUS GRIEVANCE RESTRICTION** to quiet him, Defendants Parnell, Green, R.*
*Harding, Rankins, Williams, Wolf, Mudd, McClung, Collins[45], and ~~Carlisle~~, each acting in concert*
*with the other, has conspired with, concealed, and aided Defendant Dawson in the*
*DELIBERATE and INTENTIONAL violation of the Plaintiffs constitutional rights.* To further this violation, On 10-26-18, Defendant Craig filed "false" misconduct charges against the Plaintiff, and conspired with Defendant's Dorsey, Clark, and Dawson to find the Plaintiff guilty of said "false" and "Bogus" misconduct charges.

### D. Cause of Action

*I allege that the following of my constitutional rights, privileges, or immunities have been*
*violated, and the following facts form the basis for my allegations: If necessary you may attach up to*
*two additional pages (8 1/2" x 11") to explain an allegation or to list additional counts or supporting*
*facts.*

**1a.**   **Count I:**  <u>Violation of Plaintiff's **First Amendment Right** guaranteed by the United States</u>
<u>Constitution.</u>

**1b.**   **Supporting Facts:** *(Include all facts you consider important, including Names of persons*
*involved, places, and dates. Describe exactly how each defendant is involved. State*
*the facts in your own words without citing legal authority or argument.)*

***"Plaintiff has a right, secured by the First Amended of the United States***
***Constitution, not to be subjected to "BOGUS" offense reports for use***
***of the Grievance Process/for filing complaints against staff misconduct"***

*On March 27th, 2018, after an L.C.F. Correctional Officer[46] repeatedly entered the Plaintiff's*
*housing unit and intentionally attempted to put the Plaintiff and other inmates in jeopardy by shouting*

---

45  Since the day the Plaintiff started complaining about Defendant Dawson and filing complaints against her,
Defendant Collins has begun an ALL OUT ATTACK on the Muslim population (Plaintiff himself is a Muslim) by
claiming that the Muslim population is running a Meth cartel, which is absolutely INCORRECT. Everyone of
color at this facility knows that Collins dislikes BLACKS in general, and Muslims even more.

46  Correctional Officer Latimer

out what he claimed was his gang set[47] (See, *Attachments-VII, VII a.*), the Plaintiff *verbally reported the incident to C/O Latimer's immediate supervisor, Defendant/Captain Latoya Dawson. Defendant Dawson, instead of addressing the issue of a junior correctional officer over stepping his bounds, Defendant Dawson not only told the Plaintiff to shut up, she also threatened to place the Plaintiff in the SHU if he did not stop complaining about her quote/unquote officer.*[48] On this same day, 3/27/18, the Plaintiff filed a "Request to Staff" (*Attachment-I*) to Defendant Rios (Warden) because of Defendant Dawson's threat to place him in the SHU for use of the grievance process, and on April 3rd, 2018, Defendant Collins (Assistant Warden) responded to Plaintiff's "Request to Staff" (*Attachment-I*) claiming that the Plaintiff did not note a threat (*Attachment-I, bottom of page*), when in fact the Plaintiff did, he clearly stated that Defendant Dawson threatened him with placement in the SHU, in violation of D.O.C. policy (Op-090124, entitled Grievance Procedure Guidelines), if he didn't stop complaining about C/O Latimers behavior. On April 10th, 2018, in response to Defendant Collins "*WHO CARES*" attitude, the Plaintiff filed a Grievance (*Attachment-I a.*) to Defendant Rios about the issue of being threatened with placement in the SHU by Defendant Dawson for complaining about C/O Latimers behavior, and on April 16th, 2018, Defendant Wolf[49] returned the Plaintiff's grievance (*Attachment-I a.*) unanswered for the **alleged reason** that Plaintiff allegedly requested disciplinary action against staff (*Attachment-I b.*), when in fact no such action was requested.[50] Plaintiff appealed Defendant Wolfs' refusal to answer his grievance (*Attachment-I a.*) to the D.O.C. Appellate Review Authority (*Attachment-I b., bottom of page*).[51]

That on this same day, April 10th, 2018, just hours after the Plaintiff received his grievance (*Attachment-I a.*) back from Defendant Wolf unanswered, the Plaintiff attempted to go to medical to get his insulin injection, but was stopped by Defendant Dawson who, in *RETALIATION* to Plaintiff's complaint against her, flat out refused to let the Plaintiff go get his insulin injection, so the Plaintiff filed a "Request to Staff" (*Attachment-III*) against her for *DELIBERATELY* and *INTENTIONALLY* endangering his life to Defendant Rios.(See, *Attachment-IV*) On April 14th, 2018, Defendant Wolf, acting on instructions/orders from Defendant Dawson, scratched Defendant Rios' name off of the Plaintiff's "Request to Staff" (*Attachment-III*), put Defendant R. Harding's name on it and forwarded it to him who, in response to Plaintiff's "Request to Staff" (*Attachment-III*), tried to play word games (*Attachment-III, at bottom of page*). Therefore, on April 17th, 2018, the Plaintiff filed a grievance to

---

47  Latimer was claiming "Neighbor Hood Crip"
48  This was done in a loud voice in front of approximately sixty-one(61) other individuals
49  Grievance Officer and office mate to Defendant Dawson
50  Not only does Defendant Wolf share an office with Defendant Dawson, Defendant Dawson (Captain) is
    Defendant Wolf's (Lieutenant) immediate supervisor
51  As of this date, there's been "NO" response from D.O.C. on the Plaintiff's appeal.

Defendant Rios *(Attachment-III a.)*. That on April 25th, 2018, pursuant to Defendant Dawson's instructions/orders, the Plaintiff's grievance *(Attachment-III a.)* against her (Defendant Dawson) was return to Plaintiff by Defendant Wolf for the **alleged** reason that Plaintiff allegedly failed to attach a "Request to Staff" *(Attachment III a.)* to his grievance, which is not true. Defendant Wolf, acting on instructions from and pursuant to orders from Defendant Dawson, was doing everything within her power to stop/prevent the Plaintiff's complaint from pursuing his complaint against her supervisor, Defendant Dawson.   That on April 26th, 2018, in compliance with instructions from Defendant Wolf *(Attachment-III b.)*, the Plaintiff resubmitted his April 10th, 2018 Grievance *(Attachment- a.)* to Defendant Rios *(Resubmitted Grievance, Attachment-IV-a.)*[52], but on May 7th, 2018, Defendant Rios returned the Plaintiffs grievance *(Attachment-IV b.)* to Plaintiff **GRANTING** Plaintiff relief, but threatening to place the Plaintiff on a **BOGUS GRIEVANCE RESTRICTION** at the same time to prevent the Plaintiff from continuing to pursue his complaint against Defendant Dawson.

That on April 11th, 2018, the Plaintiff again attempted to go to medical to get his insulin injection, but was again stopped from doing so by C/O Suliman, who informed the Plaintiff that he was given orders by Defendant Dawson on 4/10/18 to stop him (Plaintiff) from going to medical[53], so the Plaintiff sent another "Request to Staff" *(Attachment-VI)* to Defendant Rios. On April 24th, 2018, Defendant Williams and T. Thompson (Registered Nurse) responded to Plaintiffs "Request to Staff" *(Attachment-VI, bottom of page)* in place of Defendant Rios with a two word reply..."Will do". On May 15th, 2018, in an attempt to make it seem as though the Plaintiff was repeatedly submitting the same answered "Request to Staffs" over and over, Defendant Wolf scratched Defendant Rios' name off of Plaintiffs 4/11/18 "Request to Staff" *(Attachment-VI)*, put Defendant R. Harding's name on it, and then resubmitted the same "Request to Staff" *(Attachment-VI)* to Defendant Harding *(Attachment-VI a.)* who, basically called the Plaintiff a lie *(Attachment-VI a., bottom of page)* and stated that Plaintiff was not denied anything. On may 18th, 2018, the Plaintiff filed a grievance to Defendant Rios *(Attachment-VI b.)*, but on 5/30/18, in stead of answering the Plaintiffs grievance, the Plaintiff received his grievance back with a copy of the grievance response from 5/7/18 *(Attachment-IV b.)* attached to it *(Attachment-VI c.)*.

---

52 Even though the Plaintiff was instructed to resubmit his 4/10/18 Grievance (Attachment-III b.), when the Plaintiff did so, Defendant Wolf put a different grievance number (Grievance #18-190) on the same grievance to make it appear that Plaintiff was submitting the same answered grievance/complaint over and over when he wasn't. See, Attachments III and IV

53 C/O Suliman knew that the Plaintiff was an insulin dependent diabetic, but he was acting on instructions/orders from his supervisor, Defendant Dawson, who also knows that the Plaintiff is s diabetic

That on April 13th, 2018, at 1540 hours, Defendant Dawson waited for the Plaintiff to arrive in medical to get his insulin injection[54], came up to Plaintiff and not only took the Plaintiff's legal documents[55], but also out right t **THREATENED** the Plaintiff's **LIFE**. Defendant Dawson told the Plaintiff, and I quote.......

> "*The more you do your meaningless paperwork against me, the more that I'm going to mess with you. I CAN HAVE ANYTHING I WANT DONE TO YOU AND NOBODY WILL SAY ANYTHING ABOUT IT*"

unquote. Defendant Dawson then went into the nurses station where Defendant Parnell was, and told Defendant Parnell I quote "*WATCH WHAT I DO TO HIM NEXT*" UNQUOTE. Immediately thereafter, the Plaintiff filed a "Request to Staff" (**Attachment-VIII**) to Defendant Rios because of Defendant Dawson's **THREAT** against his (Plaintiff) **LIFE**. On April 23rd, 2018, Defendant Wolf again scratched Defendant Rios' name off of Plaintiff's "Request to Staff" (**Attachment-VIII**, top of page), wrote in Defendant R. Harding name, and forwarded it to him (Harding) who, in his response, attempted to cover for and conspire with Defendant Dawson to conceal her actions by claiming, pursuant to Defendant Parnell's lie about not seeing Defendant Dawson take anything from the Plaintiff, not hear Defendant Dawson say anything to the Plaintiff, and her claim that Defendant Dawson did not say anything to the Plaintiff, which is all a lie. A simple check of the security cameras would have proven that they both were lying. On April 26th, 2018, Plaintiff filed a Grievance (**Attachment-IX**) to Defendant Rios, but said Grievance was returned to the Plaintiff with unanswered with a copy **Attachments-IV b. and VI c.** attached to it. That on this same day (4/13/18), just **ten(10) minutes** after the Plaintiff wrote/filed a Request to Staff (**Attachment-VIII**) against her (Defendant Dawson) for **THREATENING** his (Plaintiff), and in **RETALIATION** to Plaintiff's complaints against her, Defendant Dawson wrote a **BOGUS** offense report (Attachment-X)[56] against the Plaintiff, which was thrown out after the Plaintiff showed the Disciplinary Coordinator that Defendant Dawson had just written him (Plaintiff) up in **RETALIATION** to his (Plaintiff's complaints against her (Defendant Dawson) (**Attachment-X b.**)

---

54  Plaintiff attempted to ease in medical and avoid Defendant Dawson by stopping at medical on his was from his religious services
55  The documents taken from the Plaintiff by Defendant Dawson were Plaintiff's previously filed "Request to Staffs" and "Grievances" against her.
56  Although said "BOGUS" offense report was dismissed/thrown out, it is clear that it was filed against the Plaintiff by Defendant Dawson in RETALIATION to Plaintiffs complaints against her.

That on May 16th, 2018, the Plaintiff filed a "Request to Staff" **(Attachment-XII)** to Defendant Rios, against Defendant Wolf[57] for conspiring with Defendant Dawson to prevent the Plaintiff from pursuing his grievances against her. On May 21st, 2018, instead of responding to the Plaintiff's 5/16/18 Request to Staff" **(Attachment-XII)**, Defendant Rios placed the Plaintiff on a **BOGUS** and **UNJUSTIFIED** Grievance Restriction **(Attachment-XII a.)** claiming that Plaintiffs grievances against Defendant Dawson **THREATENING** his **LIFE** is frivolous, small, and trifling.

## *Conclusion of Count I*

The evidence/documents presented in this case clearly show that on March 27th, 2018, after the Plaintiff first started filing "Request to Staffs" and "Grievances" against Defendant Latoya Dawson, she (Defendant Dawson) has, in deliberate **RETALIATION** to Plaintiffs complaints against her (Defendant Dawson), by <u>First</u> **threatening** to place the Plaintiff in the SHU for complaining about the dangerous actions of her junior staff and for use of the Grievance Process, <u>Second,</u> by issuing and causing to be issued against the Plaintiff, **BOGUS OFFENSE REPORTS** in an effort to quiet the Plaintiff's complaints against her, and <u>Third,</u> by actually **THREATENING** the Plaintiff's **LIFE**.

Plaintiff request both a **Jury Trial** and an **Emergency Protective Order**[58]against these Defendants.

------------------------------------------------------------------------------------------------

2a.    **Count II:** <u>*Conspiracy To Violate Plaintiff's Constitutional Rights in violation of 42 U.S.C.*</u>
            <u>*s/s 1985 1nd s/s 1986*</u>

2b.    **Supporting Facts:** *(Include all facts you consider important, including Names of persons*
                *involved, places, and dates. Describe exactly how each defendant is involved. State*
                *the facts in your own words without citing legal authority or argument.)*

            *42 U.S.C. s/s 1985 and s/s 1986 clearly states: "Every person who, having*
            *knowledge that any of the wrongs conspired to be done, and mentioned in section*
            *1985 of this title, are about to be committed, and having power to prevent or aid*
            *in the preventing the commission of the same, neglects or refuses to do so, if such*

---

57  **Defendant Wolf, although acting on direct instructions from Defendant Dawson, is and has willingly conspired**
     **with Defendant Dawson  to violate the Plaintiff's constitutional rights.**
58  **Request for an Emergency Protective Order filed with the Complaint**

*wrongful acts be committed, shall be liable to the party injured, or his legal*
*representatives, for all damages caused by such wrongful acts, which such*
*person by reasonable diligence could have prevented; and such damages may be*
*recovered in an action on the case; and any number of persons guilty of such*
*wrongful neglect act or refusal to correct may be joined as a Defendant in the*
*action, etc.*

On March 27th, 2018, after the Plaintiff began filing complaints (Request to Staffs and Grievances) against Defendant Latoya Dawson, a Captain at the Lawton Correctional Facility for among other things, **THREATENING** the Plaintiff's **LIFE**, but Defendant Dawson's co-workers (Defendants Parnell, Green, R. Harding, Rankins, Williams, Wolf, Mudd, M°Clung, Collins, and former Warden Rios), each acting in concert with the other, aided and conspired with the other to not only silence the Plaintiff, but to conceal Defendant Dawson's actions and prevent the Plaintiff from using the Grievance Process against her, Defendant Dawson.

That on April 3, 2018, after the Plaintiff filed a "Request to Staff" **(Attachment-I)** against Defendant Dawson for threatening to place him (Plaintiff) in segregation for complaining about the actions of another staff member whose actions were directly endangering the Plaintiffs safety, Defendant Collins, in an attempt to cover for and conceal the wrongful actions of his junior staff, ignored the Plaintiff by alleging that Plaintiff did not state a threat that was made by Defendant Dawson **(Attachment-I**, bottom of page)[59]. On April 10th, 2018, the Plaintiff filed a grievance **(Attachment-I a.)** to Defendant Rios regarding Defendant Dawson's threat to place him in segregation for use of the Grievance Process, but Defendant Wolf (Lieutenant)[60], acting in concert with Defendant Dawson, stopped the Plaintiffs grievance from reaching Defendant Rios, and returned it to the Plaintiff for the alleged reason that Plaintiff allegedly requested disciplinary action against staff **(Attachment-I b.)**, when in fact Plaintiff did not. Defendant Wolf, acting in concert with Defendant Dawson, assumed that by refusing to answer the Plaintiff's grievance, that that in itself would quiet the Plaintiff's complaint against her supervisor, Defendant Dawson. On April 17th, 2018, the Plaintiff filed an appeal to the Administrative Review Authority at the D.O.C., but it was intercepted by and thrown in the trash by Defendant Wolf, in an attempt to cover for Defendant Dawson.

That on April 14th, 2018, after the Plaintiff filed a "Request to Staff" **(Attachment-III)** to Defendant Rios against Defendant Dawson for deliberately attempting to endangering his life by

---

59  **Defendant Dawson threatened to place the Plaintiff in segregation if he continued to complain about her junior officer.**

60  **See, Footnote #8**

refusing to let the Plaintiff go to medical to get his insulin injection, Defendant Wolf, again acting in concert with Defendant Dawson, stopped the Plaintiff's "Request to Staff"(Attachment-III) from going to Defendant Rios (former Warden), and sent it instead to Defendant R. Harding (Attachment-III, top of page) who, instead of addressing Plaintiffs complaint, attempted to make lite of the issue by playing word games (Attachment-III, bottom of page). On April 17th, 2018,the Plaintiff filed a Grievance (Attachment-III a.) to Defendant Rios, but again, Defendant Wolf, acting in concert with Defendant Dawson, stopped and returned the Plaintiff's grievance unanswered (Attachment-III b.) on April 25th, 2018 for the alleged reason that Plaintiff allegedly failed to attach a copy of his "Request to Staff" (Attachment-III) to his Grievance (Attachment-III a.), which again is not true. Defendant Wolf, acting in concert with and per instructions from Defendant Dawson, was just doing everything she could to prevent the Plaintiff from pursuing his complaint against her (Defendant Wolf) supervisor (Defendant Dawson). On April 26th, 2018, the Plaintiff resubmitted his Grievance (Attachment-III a.) per orders of Defendant Wolf (Attachment-III b.) with another copy of his Request to Staff (Attachment-III) attached to it (Attachment-IV a.). On May 7th, 2018, acting on misinformation from Defendant Wolf, Dawson, Harding, and Collins, who at this time was acting in concert/conspiracy with Defendant Dawson to conceal her actions, Defendant Rios, although he granted Plaintiff the relief he requested (Attachment-IV, top of page), threatened to place the Plaintiff on a **BOGUS GRIEVANCE RESTRICTION** in order to prevent him (Plaintiff) from continuing to pursue his complaint against Defendant Dawson.[61] On April 17th, 2018, after the Plaintiff was again denied access to medical to get his insulin injection[62], Defendant Williams, after talking to Defendant Dawson, sent the Plaintiff a response to his (Plaintiff) 4/11/18 Request to Staff (Attachment-VI)[63] stating simply....Will Do (Attachment-VI, bottom of page), which is a prime example of this staffs **"I DON'T CARE/WE CAN DO AS WE PLEASE ATTITUDE"**. On May 18th, 2018, the Plaintiff filed a Grievance (Attachment-VI b.) against Defendant R. Harding because of his response (Attachment-VI b., bottom of page), but on May 30th, 2018, the Plaintiff received his Grievance (Attachment-VI b.) back unanswered, but with a copy of the response to Attachment-IV b. attached to it (Attachment-VI c.).

On April 18, 2018, just one(1) days after the **BOGUS OFFENSE REPORT (Attachment-X)** that Defendant Dawson tried to pin on the Plaintiff was thrown out after it was clear to the D.H.O. that

---

61  On 4/14/18, Defendant Wolf had also stopped a Request to Staff (Attachment-V) from going to the D.O.C. contract monitor, and sent it too to Defendant R. Harding, who didn't even bother to answer it, but instead told Plaintiff to see his response to Plaintiff's 4/10/18 Request to Staff (Attachment-IV)

62  Plaintiff was stopped by C/O Suliman, who acted on instructions from Defendant Dawson, his supervisor

63  This same Request to Staff (Attachment-VI) was copied by Defendant Wolf to make it appear that the Plaintiff was resubmitting the same answered Request to Staff and Grievances over and over, and forwarded to Defendant R. Harding (Attachment-VI a.) who, acted as if he had an attitude because Plaintiff was continuing to pursue his complaint against Defendant Dawson.

*it was done in **RETALIATION** to Plaintiff's complaints against her (Defendant Dawson), Defendant Dawson called the Plaintiff's case manager and told her to hold a special classification and drop the Plaintiff's level, so the Plaintiff filed a Request to Staff **(Attachment-XIII)** to his case manager, Defendant Green, asking her WHY she was CONSPIRING with Defendant Dawson to violate his constitutional rights. On April 20th, 2018, Defendant Green responded and tried to cover her tracks by stating, I quote.....*

> *"According to policy guidelines for maintaining level is based on your behavior towards staff and other inmates. If you have a job, have programs, and cell cleanliness. This is my justification"*

*unquote. On April 26th, 2018, Plaintiff file a Grievance **(Attachment-XIII a.)** on Defendant Green for conspiracy to violate his Constitutional Rights, because despite how Defendant Green tried to cover the fact that she too was conspiring with Defendant Dawson, Plaintiff's "Oklahoma State Department Of Corrections Adjustment Review's since December '2017 **clearly shows** that (1) Plaintiffs <u>behavior towards staff and inmates</u> is **EXCELLENT**, (2) <u>Job</u> **EXCELLENT**[64], (3) <u>Program Participation</u> **EXCELLENT**, and <u>Cell Cleanliness</u> **EXCELLENT**. (Attachments-XIII b., c., and d.)*

*On April 23rd, 2018, just ten(10) days after the Plaintiff filed a Request to Staff (Attachment-VIII, top of page) to Defendant Rios[65] against Defendant Dawson for THREATENING his (Plaintiff) LIFE, Defendant R. Harding responded(Attachment-VIII, bottom of page) by alleging, based on a clear lie by Defendant Parnell[66], claimed that (1) she did not  see Defendant Dawson take anything from the Plaintiff, which is a lie, (2) That she did not hear Defendant Dawson say anything to the Plaintiff, which is also a lie[67], but Defendant Parnell was trying to conspire with Defendant Dawson by trying to conceal her (Defendant Dawson's) actions. On April 26th, 2018, Plaintiff filed a Grievance (Attachment-IX) to Defendant Rios, but Plaintiff received the same response as given in Attachments IV b and VI c.*

---

64   **Plaintiff is now and has been since '2011, confined to a wheel chair and medically unassigned, which Defendant Green knows**
65   **Defendant Wolf again stopped Plaintiff's complaint from reaching Defendant Rios, and sent it to Defendant R. Harding instead**
66   **Although not admissible in a court of law, but used by the D.O.C. to determine if inmate or staff is being truthful, the Plaintiff requested a Polygraph, by Defendant R. Harding, Collins, and Rios declined to give the Plaintiff or the staff one.**
67   **Defendant Dawson has already admitted that she not only said something to the Plaintiff, but that she also took Plaintiffs legal documents**

On May 16th, 2018, after repeated attempts by Defendant Wolf, acting on behalf of and in conspiracy with Defendant Dawson to continually violate the Plaintiff's constitutional rights by trying to prevent the Plaintiff from using the Grievance Process against her, the Plaintiff filed a Request to Staff **(Attachment-XII)** to Defendant Rios about Defendant Wolf[68]On May 30th, 2018, Defendant Rios, instead of addressing the Plaintiff's Request to Staff **(Attachment-XII)**, just returned the Plaintiff's Request to Staff unanswered placing the Plaintiff on a **_BOGUS GRIEVANCE RESTRICTION_**, stopping the Plaintiff from pursuing his complaint against Defendant Dawson and her conspirators.

## Conclusion of Count II

The facts of this case will clearly show that, from April 3rd, 2018, the day the Plaintiff's first Request to Staff (Attachment-I) was responded to by Defendant Collins, the Defendants, Parnell, Green, R. Harding, Rankins, Williams, Wolf, Mudd, McClung, Collins, and Rios, **each acting in concert with the other, aided** and **conspired with one another to violate** the Plaintiff's constitutional rights by trying to prevent the Plaintiff from filing complaints against their fellow officer (Defendant/Captain Latoya Dawson), who had **THREATENED** the Plaintiff's **LIFE.**

**Plaintiff request both a Jury Trial and an Emergency Protective Order**[69]**against these Defendants.**

-----------------------------------------------------------------------------------------------------------

**3a.**   **Count III:** _Conspiracy To Violate Plaintiffs Constitutional Rights in violation of 42 U.S.C. s/s 1985 & 86_

**3b.**   **Supporting Facts:** (Include all facts you consider important, including Names of persons involved, places, and dates. Describe exactly how each defendant is involved. State the facts in your own words without citing legal authority or argument.)

"**Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party**

---

68  ALL Request to Staffs and Grievances, no matter who there against, is sent to Defendants Dawson and Wolfs office. They pick and choose which one to answer or disregard, which is an on-going habit here at this facility.
69  Request for an Emergency Protective Order filed with the Complaint

*injured in an action at law, etc."*

That on March 27th, 2018, after the Plaintiff began filing complaints (Request to Staffs and Grievances) against Defendant Latoya Dawson for, among other things, **THREATENING** the Plaintiff's **LIFE**, Defendants Parnell, Green, R. Harding, Rankins, Williams, Wolf, Mudd, M[c]Clung, Collins, and Rios, each acting in concert with the other, aided and conspired with the other to not only conceal Defendant Dawson's wrongful actions, but also to prevent the Plaintiff from filing complaints (Using the Grievance Process) against their fellow employee, Defendant Latoya Dawson.

Further fact are, that on April 3rd, 2018, in response to Plaintiff's 3/27/18 "Request to Staff" **(Attachment-I)** against Defendant Dawson (Captain) for threatening to place the Plaintiff in the SHU for complaining about the behavior of one of her (Defendant Dawson) junior correctional officers (C/O Latimer), Defendant Collins (Asst. Warden), in an attempt to cover for Defendant Dawson, begain trying to play word games **(Attachment-I**, bottom of page) with the Plaintiff's complaint thinking that Plaintiff would just forget about the issue, so on April 10th, 2018, the Plaintiff a Grievance **(Attachment-I a.)** to the facility Warden, Defendant Rios. On this same date (4/10/18), Defendant Wolf (Lieutenant), in an attempt to aid and conspire with her (Wolf) Captain (Defendant Dawson), stopped and returned the Plaintiff's Grievance **(Attachment-I a.)** unanswered for the alleged reason that Plaintiff allegedly requested disciplinary action against Defendant Dawson, when in fact the Plaintiff did not **(see, Attachment-I b.)**. Defendant Wolf, who also shares an office with Defendant Dawson, just attempted to squash Plaintiff's grievance by aiding and conspiring with Defendant Dawson to violate Plaintiff's constitutional rights.[70]

On April 14th, 2018, after the Plaintiff filed a "Request to Staff" **(Attachment-III)** to Defendant Rios[71] because Defendant Dawson intentionally endangered the Plaintiff's life by refusing to let the Plaintiff go to medical to get his insulin injection, but Defendant Harding, in his response to Plaintiff's "Request to Staff" **(Attachment-III)**, and in an attempt to aid and conspire with his fellow employees to cover for Defendant Dawson, started playing word games (ie. who, what, where, when, why, and how) regarding Plaintiff's complaint against Defendant Dawson **(Attachment-III**, bottom of page), so on April 17th, 2018, Plaintiff filed a Grievance **(Attachment-III a.)** to Defendant Rios, but said Grievance **(Attachment-III a.)** was again stopped and returned to Plaintiff unanswered by Defendant Wolf for the alleged reason that Plaintiff allegedly failed to attach a "Request to Staff" to his

---

70 An appeal was filed to D.O.C. on 4/20/18, but No response was received from D.O.C. regarding this issue as of this date.

71 Defendant Rios' name was scratched off the Request to Staff by Defendant Wolf and sent to Defendant Harding, who has been aiding Defendant Wolf in an attempt to cover for and conspire with Defendant Dawson

Grievance, which was not true *(Attachment-III b.).*[72] *So, on April 26th, 2018, pursuant to Defendant Wolf's instructions (Attachment-III b.), Plaintiff resubmitted his April 17th, 2018 Grievance (Attachment-IV) to Defendant Rios, and on May 4th, 2018, Defendant Rios "GRANTED" the Plaintiff the relief he requested, but threatened the Plaintiff with a "BOGUS" Grievance Restriction (Attachment-IV b.) if he continued to pursue this issue against Defendant Dawson through the Grievance Process.*

*That also on April 17th, 2018, in response to Plaintiff's 4/11/18 "Request to Staff" (Attachment-VI) to Defendant Rios regarding Defendant Dawson's orders to C/O Suliman to again stop the Plaintiff from going to medical to get his insulin injection, Defendant Williams responded by saying simply "Will Do" (Attachment-VI, bottom of page).*[73] *This same "Request to Staff"(Attachment-VI) was also sent to Defendant Harding by Defendant Wolf to make it appear that Plaintiff was sending the same answered "Request to Staff" out over and over, when in fact Plaintiff was not, it was Defendant Wolf sending copies out. On May 16th, 2018, Defendant Harding also responded to Plaintiff's 4/11/18 "Request to Staff" (Attachment-VI a.) by basically calling the Plaintiff a lie, so on May 18th, 2018, Plaintiff filed a Grievance (Attachment-VI b.) to Defendant Rios, but said Grievance was intercepted by Defendant Wolf and returned to Plaintiff unanswered with an unsigned copy of Attachment-IV b. attached to it (Attachment-VI c.).*

*That on April 23rd, 2018, ten (10) days after Plaintiff filed a "Request to Staff" (Attachment-VIII) to Defendant Rios*[74] *after his (Plaintiff) LIFE was THREATENED by Defendant Dawson, Defendant Harding, in an attempt to further cover for, aid, and conspire with Defendant Dawson, and based on blatant lies by Defendant Parnell, claimed that Defendant Dawson did not take anything from the Plaintiff*[75] *as alleged, and that Defendant Dawson allegedly did not say anything to the Plaintiff (Attachment-VIII)*[76]*, so on April 26th, 2018, Plaintiff filed a Grievance (Attachment-IX) to Defendant Rios, but again, said Grievance (Attachment-IX) was stopped by Defendant Wolf, and the Grievance Response from Attachment-IV was attached to it. That on May 16th, 2018, Plaintiff filed a "Request to Staff" (Attachment-XII) to Defendant Rios*[77] *because of Defendant Wolf's repeated attempts to prevent*

---

72 **Defendant Rios /Major Harding is a KNOWN RACIST among the black, Muslim, Mexican, and Indian (People of Color) population here at L.C.F.**

73 **Plaintiff's 4/11/18 Request to Staff (Attachment-VI) was stopped from going to Defendant Rios by Defendant Wolf, copied and sent to both Defendant Williams and Defendant Harding**

74 **Said Request to Staff was again stopped by Defendant Wolf and sent to Defendant Harding**

75 **Had Defendant Harding looked at the security cameras, he would have found that both Defendant Parnell and Dawson were lying**

76 **Defendant Dawson later admitted that she did say something to the Plaintiff, but failed to admit what she actually said**

77 **ANYTHING being sent to Defendant/Warden Rios, was normally STOPPED from reaching him by Defendant Wolf**

the Plaintiff from using the Grievance Process against her supervisor, Defendant Dawson, but on May 21st, 2018, Defendant Rios, instead of addressing the Plaintiff's complaints against his staff, just placed the Plaintiff on a *"BOGUS" GRIEVANCE RESTRICTION* to avoid addressing the issue of his staffs corruption (*Attachment-XII a.*)[78]

That on April 20th, 2018, after the Plaintiff filed a "Request to Staff" (*Attachment-XIII*) to Defendant Green, who at the time was trying to aid and conspire with Defendant Dawson to violate the Plaintiff's Constitutional Right to use the Grievance Process, Defendant Green, in a feeble attempt to cover and justify her actions, tried to claim that she was justified in dropping Plaintiff's earned credit level[79] because of Plaintiff's attitude towards staff (Meaning Plaintiff's complaints against Defendant Dawson, who had called Defendant Green to complain about the Plaintiffs complaints against her) and other inmates, because of Plaintiff's job[80], Plaintiff's programs, and cell cleanliness (*Attachment-XIII,* bottom of page). Since **ALL** of the things that Defendant Green tried to use to justify her actions are clearly disputed by their (D.O.C./L.C.F) records (see, *Attachments XIII b., XIII c., and XIII d.*), Plaintiff filed a Grievance (*Attachment-XIII a.*) to Defendant Rios because of Defendant Green and Defendant Dawson's **REPRISAL** against the Plaintiff for use of the Grievance Process, but Defendant Rios out right refused to even answer Plaintiff's grievance.

That on May 1st, 2018, just fifteen(15) days after Defendant Dawson's *"BOGUS" OFFENSE REPORT (Attachment-8 of Attachment-XVI)* was thrown out after it was clearly shown by Plaintiff that Defendant Dawson had given Plaintiff a *"BOGUS"* offense report/misconduct report in **RETALIATION** to Plaintiff's complaints against her (Defendant Dawson), Defendant Dawson had her junior C/O (Defendant Mudd) to issue the Plaintiff another *"BOGUS"* offense report (*Attachment-XVIII*) for allegedly coercion of staff, claiming that the Plaintiff allegedly threatened to flood the unit[81], when in fact the Plaintiff did not. On May 7th, 2018, in what can only be described as a *"STAGED DISCIPLINARY HEARING"*, Defendant McClung, acting on instructions from her supervisor (Defendant Dawson), and despite the fact that there was NO evidence to support the conviction of a rule violation, found the Plaintiff guilty of said *"BOGUS"* offense report in violation of D.O.C. policy OP-060125, at pg. 6. F. (Entitled "Standard of Proof") (*Attachment-XVIII c.*). Plaintiff

---

78  Defendant Rios was scheduled to retire at or around the end of July '2018, so he wasn't really concerned about what was going on around him

79  By dropping the plaintiff's earned credit level, it increases the length of time that Plaintiff has to serve on his sentence

80  Plaintiff is confined to a wheel chair, and medically unassigned, which Defendant Green already knows because she is the Plaintiff's case manager

81  Plaintiff's housing unit/pod holds 62 inmates in a two story structure. It would be impossible for any one inmate to flood the pod.

appealed to Defendant Rios, but Defendant Wolf, in a last ditch effort to aid/conspire with Defendant Dawson, intercepted and confirmed Plaintiff's conviction of said *"BOGUS"* offense report.[82].

### Conclusion of Count III

As shown herein, starting from March 27th, 2018, that day that Plaintiff first started filing complaints against Defendant Dawson (Captain), her fellow employees, Defendant Parnell (C/O), Green (C.M.), R. Harding (Major), Rankins (R.N.), Williams (P.A.), Wolf (Lieutenant), Mudd (C/O), McClung (C/O), Collins (A.W.), Rios (former Warden), and Carlile (Chaplain), each acting in concert with the other, aided and conspired with Defendant Dawson to violate the Plaintiff's constitutional rights[83] by **FIRST** condoning her (Defendant Dawson) actions, **SECOND** by aiding her in the concealment of her actions, and **THIRD** by issuing and causing to be issued *"BOGUS"* offense reports/misconduct reports against the Plaintiff to quiet his (Plaintiff) complaints against their captain, Defendant Dawson.

Plaintiff request both a Jury Trial and an Emergency Protective Order[84]against these **Defendants.**

----------------------------------------------------------------------------------------------------

**4a.**   **Count IV:** <u>Violation of Plaintiff's Constitutional Rights against Cruel and Unusual Punishment</u>
        <u>pursuant to the Eighth Amendment of the United States Constitution.</u>

**4b.**   **Supporting Facts:** *(Include all facts you consider important, including Names of persons*
        *involved, places, and dates. Describe exactly how each defendant is involved. State*
        *the facts in your own words without citing legal authority or argument.)*

        On April 13th, 2018, after the Plaintiff started filing complaints (Request to Staffs/Grievances) against Defendant Dawson for "THREATENING" his (Plaintiff) life **(Attachment-VIII)**, Defendant Dawson talked to Defendant Rankins and Williams and the Plaintiff's insulin injections were all of a sudden wrongfully stopped without legal or medical justification[85], so the Plaintiff filed a "Request to Staff"**(Attachment-XI)** to Defendant Williams asking him why he took me (Plaintiff) off my insulin, but Defendant Williams flat out refused to answer Plaintiffs "Request to Staff"**(Attachment-XI, bottom of page).** As a result, Plaintiff immediately filed a complaint against

---

82  Defendant Wolf, as shown herein, is a Lieutenant who not only shares an office with Defendant Dawson (her supervisor), but also does just what she's told to do by Dawson, whether it's right or wrong
83  Right to use the Grievance Process without the threat of REPRISAL or RETALIATION
84  Request for an Emergency Protective Order filed with the Complaint
85  Both Defendants Rankins and Williams are well aware that Plaintiff's blood sugar runs between 350 and 550

Defendant Williams with the State Medical Board for his deliberate indifference to Plaintiff's health and safety, and soon thereafter, Plaintiff's insulin injections were restarted by a Nurse Practitioner[86]. Soon thereafter, when the Plaintiff's insulin was restarted, the Plaintiff started getting sick, as if something was being put into his insulin syringe[87], so the Plaintiff has not taken any insulin out of fear of what Defendant Rankins and Williams are having put in Plaintiff's insulin syringe pursuant to Defendant Dawson's instructions, who is being fed information (medical & otherwise) about Plaintiff and other inmates by her friend and fellow co-worker, Defendant Parnell[88], whose lied for and aided Defendant Dawson in attempting to conceal the fact that she (Defendant Dawson) **"THREATENED"** the Plaintiff's life. Defendant Rankins, the Registered Nurse who runs the private prison medical unis, is responsible for the Plaintiff being denied dental treatment as well. Plaintiff has repeatedly informed medical/dental that e has four teeth that constantly hurts and needs to be pulled[89], but Defendant Rankins is denying the Plaintiff dental treatment, forcing the Plaintiff to be subjected to constant pain and suffering.

   Plaintiff request both a Jury Trial and an Emergency Protective Order[90]against these Defendants.

-----------------------------------------------------------------------------------------------------

-----------------------------------------------------------------------------------------------------

5a.   *Count V: Deliberate Indifference to Plaintiff's Health and Safety in violation of the 8th*
                    *Amendment of the United States Constitution*

5b.   **Supporting Facts:** *(Include all facts you consider important, including Names of persons involved, places, and dates. Describe exactly how each defendant is involved. State the facts in your own words without citing legal authority or argument.)*

   As indicated herein, the L.C.F. is a major gang yard within D.O.C.[91]that constantly has gang fights, stabbings, etc.[92] As shown herein and verified by and within the Plaintiff's medical files/records, the Plaintiff is confined to a wheel chair as a result of a work related accident in '2006.

-----------------------------------

86  Both the Nurse Practitioner and the Physician Assistant (Defendant Williams are both foreigners who can hardly speak English and is known for not caring about the inmates health or medical needs
87  Plaintiff have not had any insulin since May 17th, 2018
88  Defendant Parnell is a lying, gossiping old women who works in medical as security, and is often extremely disrespectful to the inmates because she's allowed to get away with it by Defendant Dawson and her boyfriend, Lt. Adams
89  There broken beneath the gums, and are constantly getting infected
90  Request for an Emergency Protective Order filed with the Complaint
91  Although L.C.F. is a Private Prison/Company, it houses a large number of gang members within D.O.C.. Plaintiff is not now, nor has he ever been a gang member or affiliated with gang members
92  Most recent incident was on 7/19/18. A fight broke out in the hall ways between the Hoover and Neighbor Hood Crip gangs which resulted in several inmates being stabbed

34.

That since the Plaintiff started having problems with and filing complaints against Defendant Dawson[93], and despite the fact that the Plaintiff is **not a gang member** or affiliated with gang members, Defendant Dawson and her conspirators, in a **deliberate attempt** to cause the Plaintiff harm/have something happen to the Plaintiff, is forcing the Plaintiff to house with known active gang members in violation of both D.O.C. and L.C.F. policies, which endangers the Plaintiff's life on a daily basis, especially considering the fact that Plaintiff is confined to a wheel chair and unable to defend himself.

D.O.C. policy Op-030102, entitled "Inmate Housing" clearly states.....

<u>Section I.B.2</u>. "The safety and security of the inmate and the assigned facility/unit will be the focus of all decisions relative to an inmates housing assignments. Specific reasons for any security related restrictions will be fully documented on the "Cell Assessment Form" (Attachment-A of D.O.C. Op-030102).

<u>Section III. 5.</u> "Inmates with medical, physical and developmental disabilities or mental health concerns will be housed in a manner that provides for their safety and security, etc.

L.C.F. policy Op-030102 states.....

<u>Section II B.4.a. and c.</u>

"If an inmate is not appropriate for unrestricted assignment, the inmate should be assigned as one of the following:

(a) Medical Assignment

(c) Unrestricted with conditions.

Inmates who are unrestricted but needs specific housing assignments due to the inmates vulnerability such as physical statute, age, criminal history, offender sepratees on file, etc."

<u>Section II B.5</u>

"Inmates with medical disabilities or mental health concerns will be housed in a manner that **provides for their safety and security**. Inmates with disabilities will be assigned to housing designed for their use and provides integration with other inmates, etc."

<u>Section C.1.</u>

---

93 **Defendant Dawson not only holds the rank of captain, she's also in charge of the facility's Gang Task Force which is referred to as S.T.G. (Security Threat Group)**

*All housing/cell assignments will be done in accordance with* **SOUND CORRECTIONAL PRACTICES** *to ensure the* **safety** *and* **security** *of all concerned. Under* **NO CIRCUMSTANCES** *will an inmate be assigned to be housed with another inmate when such an assignment would constitute a* **CLEAR DANGER** *to the safety, security, and control of the inmate or the facility."*

The Defendants policy, practice and procedure in forcing the Plaintiff, a handicap inmate who's confined to a wheel chair, that's neither a gang member or affiliated with gang members, to be housed with known and active gang members, in violation of their own policies, clearly shows their Deliberate Indifference to the Plaintiff's safety and security knowing that Plaintiff is defenseless to violence due to his medical situation and could be seriously harmed if not killed when gang violence erupts.

The Defendants, because of Plaintiff's complaints against them, in a deliberate attempt to cause this Plaintiff deadly harm, is knowingly and deliberately forcing the Plaintiff to be housed in a deadly situation/forcing the Plaintiff to be housed in and with known active gang members which places the Plaintiff in a dangerous situation on a daily basis.

*Plaintiff request both a Jury Trial and an Emergency Protective Order against these* **Defendants.**

Count. VI ... located at page immediately following "Declaration Under Penalty of Perjury" at page # 44 thru. 46.

## E. Previous Lawsuits and Administrative Relief

1.   Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to the conditions of your imprisonment? Yes_X_ No___.

If your answer is "Yes", describe each lawsuit. If there is more than one lawsuit, describe each additional lawsuit using the same format on a blank sheet of paper labeled "E. Previous Lawsuit and Administrative Relief"

a.   Parties to previous lawsuit:   See Attached

   Plaintiffs:

   Defendants:

b.   Name and location of court and docket number:

c.   Approximate date of filing lawsuit:

d.   Issues raised:

e.   Disposition:

f.   Approximate date of disposition:

36-

2.      *Have you previously sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in Part D? Yes* ✓ *No____. If your answer is "Yes", BRIEFLY EXPLAIN HOW RELIEF WAS SOUGHT AND THE RESULT. If your answer is "No", briefly explain why administrative relief was not sought:*

    <u>From March 27th, 2018 thru. May 30th, 2018, Plaintiff filed several "Request to Staffs" and "Grievances" (Attached) to the administrative official who, in an attempt to aid, conspire, and conceal their fellow employees actions, placed the Plaintiff on a **"BOGUS GRIEVANCE RESTRICTION"** in an attempt to quiet the Plaintiff's complaints.</u>

3.      *Have you exhausted available administrative remedies? Yes* X *No____. If your answer is "Yes", briefly explain the steps taken and attach proof of exhaustion. If your answer is "No", briefly explain why administrative remedies were not exhausted:*

    <u>From March 27th, 2018 thru. May 30th, 2018, both "Request to Staffs" and "Grievances were filed to and against the Defendants, but on May 30th, 2018, in an attempt to quiet the Plaintiff, Defendant Rios, based on lies from Defendants Dawson and Wolf, placed the Plaintiff on a BOGUS GRIEVANCE RESTRICTION" in an attempt to quiet the Plaintiff's complaints.</u>

## F. Previously Dismissed Actions or Appeals

1.      *If you are proceeding in forma pauperis under 28 U.S.C. s/s 1915, describe each civil action or appeal you have brought in a court of the United States while incarcerated or detained in any facility that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. If there is more than one civil action or appeal, describe the additional actions or appeals using the same format on a " 8 ½ 11" paper labeled "F. Previous Dismissed Actions or Appeals".*

    a.      Parties to previous lawsuit: N/A
        Plaintiffs:
        Defendants:
    b.      Name and location of court and docket number: N/A
    c.      Approximate date of filing lawsuit: N/A
    d.      Issues raised N/A
    e.      Grounds for dismissal: ____frivolous ____malicious ____failure to state a claim upon which relief may be granted.        yes

2.      Are you in imminent danger of serious physical injury X No ____. If your answer is "Yes", describe the facts in detail without citing legal authority or argument:

    <u>The Plaintiff's life was THREATENED by Defendant/Captain Latoya Dawson who has a history of allowing and/or provoking inmate on inmate assaults, and then using her position as Captain and her relationship with a Lieutenant to hide/cover and conceal her actions with the aid of her fellow employees.</u>

Plaintiff is confined in a wheel chair and being forced to be housed with known active gang members[94], WHICH PUTS THE Plaintiff in constant danger of serious injury or death.
Furthermore, the Plaintiff is a type two insulin dependent diabetic who, due to Defendant Dawson's "THREAT" against his life [95], has not had his insulin injection since May 17th, 2018 out of fear that Defendant Dawson, acting through Defendants Rankins and Williams, will have something put in his (Plaintiff) insulin injections or syringe
Plaintiff has requested an "Emergency Protective Order", and injunctive relief.

## Request For Relief

I believe that I am entitled to the following relief:

Plaintiff seeks compensatory, punitive, pain and suffering, and injunctive relief in the following manner...

1.  For Defendant Dawson's blatant abuse of her authority, which includes but is not limited to "Threatening Plaintiff's Life", filing false Disciplinary Charges Against Plaintiff for Use of the Grievance Process" against her, "Deliberately Endangering Plaintiff's Life By Preventing Him from Receiving His Insulin Injections", and "Having Her Fellow Employees to aid and conspire with her to violate Plaintiff's rights and conceal her wrongful actions, Plaintiff seeks a minimum of One Hundred Thousand ($100,000.00) dollars in compensatory, punitive, mental anguish, and pain and suffering. Jury Trial requested.

Ab'dullah Lamar Rashid Muhammad

D.O.C. #117368
Lawton Correctional Facility, 3B109
8607 South st Flower Mound Road
Lawton, Oklahoma 73501

2.  For Defendant Parnells deliberate conspiracy with Defendant Dawson to violate Plaintiff's constitutional rights, and her deliberate attempt to aid Defendant Dawson in concealing her actions, Plaintiff seeks a minimum of fifteen Thousand ($15,000.00) dollars from this Defendant. Jury Trial requested.

---

94  PLAINTIFF IS NOT A GANG MEMBER, NOR IS HE AFFILIATED WITH GANG MEMBERS
95  See Plaintiff's "Request For Emergency Protective Order" attached hereto

<u>Request for Relief, con't.</u>

3.    For Defendant Greens deliberate attempt to aid and conspire with Defendant Dawson to violate the Plaintiffs constitutional rights, and then attempt to conceal her own wrongful actions after being confronted by Plaintiff, Plaintiff seeks a minimum of Fifteen Thousand ($15,000.00) for both mental anguish and pain and suffering. Jury Trial requested.

4.    For Defendant F. Hardings blotant and intentional attempt to conspire with and conceal the wrongful actions of his junior officers (Defendant Dawson) violation of Plaintiffs constitutional rights, Plaintiff seeks a minimum of Sixty Thousand ($60,000.00) dollars in compensatory, punitive, and mental anguish due to his complete lack of adequate supervision of his junior officers which resulted in the violation of Plaintiffs rights.

5.    For Defendant Hankins out right attempt to aid and conspire with Defendant Dawson in not only violating the Plaintiffs constitutional rights, but also in aiding and condoning Defendant Dawsons' stopping the Plaintiff from getting his insulin shots, Plaintiff seeks a minimum of Twenty Thousand ($20,000.00) dollars in both compensatory, punitive, mental anguish, and pain and suffering. Jury Trial requested.

6.    For Defendant Williams' conspiracy to aid Defendant Dawson in violating the Plaintiffs constitutional rights by stopping Plaintiffs insulin injections, and for his blotant Deliberate Indifference to Plaintiffs medical needs which endangered Plaintiffs life, Plaintiff seeks a minimum of Twenty Thousand ($20,000.00) dollars in compensatory, punitive, mental anguish, pain and suffering. Jury Trial requested.

7.    For Defendant Wolf's blotant conspiracy with Defendant Dawson to violate Plaintiffs constitutional rights by copying

39.

## Request For Relief, con't.

Plaintiff's complaints against her supervisor (Defendant Dawson) and sending them to various people throughout the facility to make it appear that Plaintiff was abusing the grievance process by sending the same complaints out over and over to justify not answering Plaintiffs complaints, and for placing the Plaintiff on a "Bogus Grievance Restriction" to prevent Plaintiff from continuing to use the grievance process against her supervisor (Defendant Dawson), Plaintiff seeks a minimum of Sixty Thousand ($60,000.00) dollars from this Defendant for compensatory, punitive, mental anguish, pain and suffering. Jury Trial Requested.

8.   For Defendant Mudd knowingly, intentionally, and deliberately filing false disciplinary charges against the Plaintiff in an effort to aid and conspire with Defendant Dawson to quiet the Plaintiff and stop his complaints against her supervisor (Defendant Dawson), Plaintiff seeks a minimum of fifteen Thousand ($15,000.00) dollars for mental anguish, pain and suffering caused by the filing of said false charges. Jury Trial Requested.

9.   For Defendant McClungs aiding and conspiring with Defendant's Dawson and Mudd to find the Plaintiff guilty of false disciplinary charges, Plaintiff seeks a minimum of Ten Thousand ($10,000.00) dollars from this Defendant. Jury Trial Requested.

10.   For Defendant Collins deliberate refusal to adequately supervise his junior staffs actions which resulted in the continued violation of Plaintiffs' constitutional rights, and his conspiracy to aid in and conceal the violation of Plaintiffs rights, Plaintiff seeks a minimum of Sixty Thousand ($60,000.00) from this Defendant. Jury Trial Requested.

40.

## Request For Relief, cont.

11. .... For Defendant Carlisle's Deliberate Indifference to Plaintiffs' religious rights to be served Halal (adequate Halal) meals, and for his aiding and conspiring with Defendant Rawlins to deprive Plaintiff of his religious (Halal) meals, which has forced the Plaintiff to go without eating, Plaintiff seeks a minimum of Twenty-Five ($25,000.00) Thousand dollars from this Defendant for compensatory, punitive, mental anguish, pain and suffering. Jury Trial Requested!

12. .... For Defendant Craig's intentional filing of "False" and "Bogus" misconduct charges against the Plaintiff in an effort to aid and conspire with Defendant Dawson, Plaintiff seeks a minimum of Fifty Thousand ($50,000.00) from this Defendant for compensatory, punitive, mental anguish, pain, and suffering. Jury Trial Requested!

13. .... For Defendant Dorsey's deliberate aiding/conspiring with Defendant's Craig, Clark, and Dawson in pursuing "False" and "Bogus" misconduct charges against the Plaintiff, Plaintiff seeks a minimum of Fifty Thousand ($50,000.00) dollars from this Defendant for compensatory, punitive, mental anguish, pain, and suffering, and to discourage such future acts such as this. Jury Trial Requested!

14. .... For Defendant Clark's deliberate and intentional conspiracy with Defendants Craig, Dorsey, and Dawson to violate the Plaintiffs' rights by aiding in and pursuing "False" and "Bogus" misconduct charges against the Plaintiff, and then acting as if it was funny, Plaintiff seeks a minimum of Sixty Thousand ($60,000.00) dollars from this Defendant for compensatory, punitive, mental anguish, pain, and suffering. Jury Trial Requested!

## Injunctive Relief

Due to the serious nature of the allegations made in this case, Defendant Dawsons' history of condoning and/or causing of inmate on inmate violence (see, Butler v. Rios, CIV-17-364-F (W.D. Okla. 2017), her affiliations (relationship with gang members/inmates), as well as her influence and sexual relationships among fellow staff, Plaintiff seeks injunctive relief in the following manner:

1..... Plaintiff seeks an injunction enjoining Defendant Latoya Dawson, as well as her boyfriend, Lt. A. Adams, from being within one thousand (1000) feet of the Plaintiff at any time.

2..... Plaintiff seeks an injunction enjoining Defendant's A. Wolf, R. Harding, and B. Collins (all known racist), from also being within one thousand (1000) feet of the Plaintiff at any time. Each of these Defendants are senior staff members who have openly condoned and attempted to conceal Defendant Dawsons' illegal actions.

3..... Plaintiff further seeks an injunction enjoining Defendant J. Carlisle, a religiously bias Christain Chaplain from over seeing or having any say in Islamic dietary matters. Defendant Carlisle is an "alleged" Christain who is not adequately trained in the dietary ethics of the muslim belief, nor is he knowledgeable in what foods are and aren't allowable food for a muslim diet, and therefore should not be allowed to enterfear with meals that he knows nothing about.

A. T. Rashid Mohammed
Ab'dullah Lamar Rashid Muhammad
#117368
Lawton Correctional Facility, 1B104
860 7 S.E. Flower Mound Rd.
Lawton, Oklahoma 73051

Dated: 12/17/18

## Declaration Under Penalty Of Perjury

The undersigned declares under the penalty of perjury that he is the Plaintiff in the above "amended" action. That he has read the above "amended" complaint, and that the information contained therein is true and correct. 28 U.S.C. §/s 1746; 18 U.S.C. §/s 1621.

Executed at the Lawton Correctional Facility on this 17th day of December, 2018.

Abd'ullah Lamar Rashid Muhammad, #112368
Lawton Correctional Facility, 7B104
8607 S.E. Flower Mound Rd.
Lawton, Oklahoma 73501

xc. Amended copy to:

Ferguson, Ferguson & Ferguson
941 E. Britton Rd.
Oklahoma City, Oklahoma 73114
"Attorney for Defendants"

43.

_Count VI / Addition to Count I_

6.A.   Count **VI**: _Violation of Plaintiffs' First Amendment Right guaranteed by the United States Constitution._

6.b.   Supporting Facts:

"Plaintiff has a right, secured by the First Amendment of the United States Constitution, not to be subjected to "Bogus" and "False" misconduct charges for using the Grievance Process or for filing complaints against staff misconduct."

On October 26th, 2018, just thirty-nine (39) days after the Plaintiff filed suit against Defendant Dawson and other key staff members at the L.C.F., Defendants' Craig, Dorsey, and Clark, acting in behalf of and on instruction from their supervisor, Defendant Dawson, not only filed "False" and "Bogus" misconduct charges against the Plaintiff, but also set in motion a deliberate plan to further violate the Plaintiffs' rights by intentionally denying the Plaintiff a fair and impartial disciplinary hearing to retaliate against the Plaintiff for filing suit against their supervisor, Defendant Dawson. Further facts are:

1. . . . . . On October 25th, 2018, thirty-eight (38) days after the Plaintiff filed a "1983 Civil Complaint" and "Emergency Protective Order" (filed 9-17-18) against Defendant Dawson at the L.C.F., the Plaintiff was transferred to the L.C.F. and placed in the A.U. Transit Unit. No reason given.

2. . . . . . That on October 26th, 2018, Defendant Craig lied and claimed that Plaintiff had just threatened Defendant Dawsons' life, and she proceeded to write and file "Bogus" and "False" misconduct charges against Plaintiff. (Attachment - **XXII**)

44.

## Count-VI, Continued

3. . . . . . That on this same date (10-26-18), Defendant Craig attempted to enlist another Case Manager, Mr. Blay, to lie and write a statement for her to support her "False" misconduct charges against the Plaintiff, which he refused to do. (See, Attachments XXIII and XXIV).

4. . . . . . That on November 2nd, 2018, Defendant Dorsey, acting on instructions from Defendant Dawson, and in an attempt to keep off the record that Plaintiff already has a suit pending against Defendant Dawson, falsified his investigation by alleging that Plaintiff didn't want to make a statement in his defense, and that he had no witnesses to the alleged rule violation. Defendant Dorsey outright refused to allow the Plaintiff the opportunity to have his misconduct invest-igated. (Attachment-XXV

5. . . . . . That on November 9th, 2018, Defendant Clark, pursuant to instructions from his supervisor, Defendant Dawson, and in retaliation to Plaintiff suit against his fellow staff members, held a "Staged" disciplinary hearing four (4) days past the due date, refused to let Plaintiff attend, and found the Plaintiff guilty of said "Bogus" and "False" discip-linary charge. (Attachment - XXVI)

6. . . . . . . That at every stage of the process relating to this "False" and "Bogus" misconduct and "staged" disciplinary hearing, the Plaintiff was denied due process and blatantly retaliated against for filing suit against the L.C.F. staff.

## Conclusion of Count VI

The evidence in this case clearly shows that, from 10-26-18 until the current date, the Defendants', A. Craig, Dorsey, and Clark, each acting individually and in concert with the other, intentionally and deliberately filed and pursued "False" and "Bogus" misconduct charges against the Plaintiff pursuant to instructions from their supervisor, Defendant Dawson, and

in retaliation to Plaintiffs' suit (filed 9-17-18) against her and her fellow staff members in direct and deliberate violation of the Plaintiff's Constitutionally Protected Rights.

Plaintiff request both a Jury Trial and Emergency Protective Order against these Defendants.

<u>Previous Lawsuits And Administrative Relief, cont.</u>

A.  Plaintiff: <u>Abdullah Lamar Rashid Muhammad.</u>
    Defendants: <u>Sam Calbone, Travis Smith, Dennis Cunningham,
    Ramona Hollier, D. Brannon, J. Cardwell, D. Umbarger,
    and B. Smith.</u>

b.  Name and location of court and docket number:
    <u>United States Dist. Court - West. Dist. Okla. in Oklahoma
    City, Oklahoma. No. CIV-04-688-T.</u>

c.  Approximate date of filing lawsuit: <u>May. 2nd, 2005.</u>

d.  Issues Raised: <u>Information not available at this time</u>

E.  Disposition: <u>Dismissed/Appealed 11/30/05  156 Fed. Appx. 87</u>

f.  Approximate date of disposition: <u>Unknown</u>

A.  Plaintiff: <u>Abdullah Lamar Rashid Muhammad.</u>
    Defendants: <u>Robert Berry, John Thomas, Matt Knight, Mike
    Pruitt, Bill White, Mike Mullins, Bobby Boone.</u>

b.  Name and location of court and docket number:
    <u>United States Dist. Court - East. Dist. Okla. in
    Muskogee, Okla. No. CIV-04-467-S.</u>

c.  Approximate date of filing lawsuit: <u>February 8th, 2006.</u>

d.  Issues Raised: <u>Information not available at this time</u>

E.  Disposition: <u>Dismissed/Appealed 11/4/06, No. 06.7021</u>

f.  Approximate date of disposition: <u>Unknown</u>

A.  Plaintiff: <u>Abdullah Lamar Rashid Muhammad.</u>
    Defendant: <u>Debbie Morton</u>

b.  Name and location of court and docket number:
    <u>Dist. Court - Okla. County in Oklahoma City, Okla.
    CJ-2005-1614.</u>

c.  Approximate date of filing lawsuit:

d.  Issues Raised: <u>Writ of Mandamus to compel defendant</u>

47.

to answer Plaintiffs' grievances.

E.  Disposition: Dismissed/Appealed. Appeal No. 102, 258
    (Supreme Court of Oklahoma).

f.  Approximate date of disposition: Unknown

A.  Plaintiff: Ab'dullah Lamar Rashid Muhammad.
    Defendant: Guilfoyle

b.  Name and location of court and docket number:
    Dist. Court - Oklahoma County in Oklahoma City,
    Oklahoma. CJ-2004-9460.

c.  Approximate date of filing lawsuit: Unknown

d.  Issue raised: Writ of Mandamus to compel defendant
    to answer Plaintiffs' grievances.

E.  Disposition: Dismissed.

f.  Approximate date of disposition: Unknown

A.  Plaintiff: Ab'dullah Lamar Rashid Muhammad
    Defendant: Workman,

b.  Name and location of court and docket number:
    United States Dist Court - East. Dist. Okla. in Muskogee,
    Oklahoma. No.

c.  Approximate date of filing lawsuit: Unknown

d.  Issues raised: Information not available at this time

E.  Disposition: Dismissed

f.  Approximate date of disposition: Unknown

Additional information not available due to no access
to Westlaw or adequate research abilities at L.C.F.